FIFTH DIVISION
June 1, 2007

Nos. 1-05-1501 & 1-05-1502 (consolidated)

|  |  |  |
|---|---|---|
| | ) | |
| CAROL ROKOSIK, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| THE RETIREMENT BOARD OF THE FIREMEN'S | ) | Honorable |
| ANNUITY AND BENEFIT FUND OF CHICAGO, | ) | William O. Maki, |
| | ) | Judge Presiding. |
| Defendant-Appellee. | ) | |
| | ) | |
| _____ | )) | |
| | )) | |
| | )) | Appeal from the |
| ELLEN PRESTON, | )) | Circuit Court of |
| | )) | Cook County |
| Plaintiff-Appellant, | )) | |
| | )) | |
| v. | | |
| | | Honorable |
| THE RETIREMENT BOARD OF THE FIREMEN'S | | William O. Maki, |
| ANNUITY AND BENEFIT FUND OF CHICAGO, | | Judge Presiding. |
| | | |
| Defendant-Appellee. | | |

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Plaintiffs Carol Rokosik and Ellen Preston each filed separate complaints for

administrative review in the circuit court against defendant, the Retirement Board of the

1-05-1501 & 1-05-1502 (consolidated)

Firemen's Annuity and Benefit Fund of Chicago (Board). In their complaints, both plaintiffs challenged Board decisions granting them widow's non-duty-related annuity benefits pursuant to section 6-141.1 of the Illinois Pension Code (Code or Pension Code) (40 ILCS 5/6-141.1 (West 2004)), rather than the greater widow's duty-related annuity benefits pursuant to section 6-140 of the Code (40 ILCS 5/6-140 (West 2004)). In addition, Preston's complaint sought a writ of mandamus ordering the Board "to notify all potential widows of their rights under the [Pension Code] and to conduct a hearing conforming to fair notice and due process."

A section 6-141.1 widow's non-duty-related annuity ("non-duty death benefit" or "non-duty annuity") entitles a widow of a firefighter who was not retired and had at least 1½ years of creditable service at the time of his death to the greater of (1) "30% of the salary attached to the rank of first class firefighter in the classified career service at the time of the fireman's death" or (2) 50% of the retirement annuity for which her husband would have been eligible had he retired the day before his death. 40 ILCS 5/6-141.1 (West 2004). A section 6-140 widow's duty-related annuity ("duty death benefit" or "duty annuity") entitles a widow to a benefit equal to 75% of her husband's salary. 40 ILCS 5/6-140 (West 2004).

On September 10, 2003, the circuit court entered an order dismissing the count of Preston's complaint which sought a writ of mandamus. On April 22, 2005, the circuit court entered two separate written orders affirming the Board's decisions denying plaintiffs' requests for duty annuities. On May 9, 2005, Preston filed a notice of appeal seeking review of both the circuit court's order dismissing her request for a writ of mandamus and its order affirming the Board's denial of her request for a duty annuity. On that same date, Rokosik filed a separate

2

notice of appeal seeking review of the circuit court's order affirming the Board's denial of her request for a duty annuity. Thereafter, on July 29, 2005, this court entered an order consolidating the two appeals pursuant to an agreed motion filed by counsel for Preston and Rokosik. Plaintiffs contend on appeal that they are entitled to duty annuities under section 6-140 because their husbands were receiving occupational disability benefits at the time of their deaths for diseases that permanently prevented them from returning to active service. In addition, Preston contends that the trial court should have granted her request for a writ of mandamus.

BACKGROUND

Ellen Preston

Ellen Preston is the widow of John Preston (Mr. Preston). Mr. Preston began working for the Chicago fire department in November 1974, and on October 22, 2000, at age 49, he suffered a heart attack while on duty. Following his heart attack, Mr. Preston applied for an occupational disability benefit, and in December 2001 the Board conducted an evidentiary hearing on that application.

Various medical reports and records were presented at that hearing. A report by Board physician George S. Motto, who evaluated Mr. Preston following this event, related the circumstances surrounding the heart attack as follows:

"[W]hile on[] duty at a firehouse on October 22, 2000 [Mr. Preston] developed a[n] uneasy feeling and a tightness in his upper chest by his clavicle (collar bone). He then walked up a flight of

3

> stair[s] and when he entered his room, in the presence of a friend
>
> actually had a syncopic episode from which he awakened. He had
>
> very little pain although he describes marke[d] diaphoresis
>
> (sweating). He finally decided to seek help in the hospital. He was
>
> brought to St. Francis Hospital in Blue Island where he was having
>
> an acute anterior wall myocardial infarction."

Dr. Motto's report additionally noted that Mr. Preston "suffered an acute myocardial infarction which required stenting and then angioplasty" and opined that "[b]ecause of his coronary artery disease he is disabled and should not perform paramedic duties."

A report prepared by Dr. Joseph V. Messer, who also evaluated Mr. Preston, noted that Mr. Preston had "generally enjoyed good health except for significant obesity with a 100 pound weight gain over the past five years, until [the date of his heart attack], when he lost consciousness after climbing the stairs to his office." Dr. Messer noted in his report that he "urged [Mr. Preston] to contact his primary care physician for an evaluation of his serum lipids with appropriate therapy if indicated, and for referral to a weight loss program such as 'Weight Watchers' in an effort to reduce his significant, near-morbid exogenous obesity."

At the hearing on his application for occupational disability benefits, Mr. Preston was asked, "Did you develop your heart condition during the time you were in service with the Fire Department?" Mr. Preston responded "I can't say. I believe I did. I had a heart attack the morning I went to work on October 22, of 2000." Mr. Preston additionally testified that he had no knowledge of any heart problems prior to his heart attack. Dr. Motto, the only witness other

than Mr. Preston to testify at the hearing, opined that Mr. Preston's disability was permanent.

At the conclusion of the hearing, the Board granted Mr. Preston an occupational disease disability benefit pursuant to section 6-151.1 of the Pension Code (40 ILCS 5/6-151.1 (West 2000)), and upon the motion of one of the Board members, found that the disability was permanent. The Board's "Decision and Findings of Facts," dated December 19, 2001, states that Mr. Preston "is unable to perform his duties in the Chicago Fire Department by reason of heart disease resulting solely from his service as a fireman."

Mr. Preston died on September 10, 2002, at age 50; the death certificate states that the cause of death was coronary artery disease. Following her husband's death, Preston submitted an application for widow's annuity. The Board subsequently granted Preston an ordinary widow's annuity pursuant to section 141.1 of the Pension Code and notified her of its decision in an October 2002 letter.

On December 30, 2002, Preston filed a two-count complaint for administrative review. Count I alleged "[t]he decision of the Board should be reversed on the grounds that as a matter of law and the manifest weight of the evidence, [Preston] is entitled to section 6-140 duty death widow benefit." In addition, count I asserted that the Board's actions violated Preston's due process rights to a fair hearing and specifically alleged that "the [Board's] notice of hearing and post-hearing letters to plaintiff failed to provide any notice of any material facts or controversy to which [she had a] right to be present, retain an attorney, present evidence, or cross-examine witnesses." Count II alleged that "[a] substantial number of widows whose husbands died while in receipt of duty disability benefits have a clear legal right to Section 6-140 widow's annuity" and asserted that a substantial number of widows "are now receiving substantially less because

the Board failed to afford a due process hearing as required by the Illinois and United States Constitutions." Based on these allegations, Preston sought a writ of mandamus ordering the Board to notify all potential widows of their rights under the Pension Code and to conduct a hearing conforming to fair notice and due process.

The trial court dismissed count II of Preston's complaint pursuant to a motion filed by the Board. However, the trial court remanded count I of Preston's complaint to the Board for a hearing, finding that the Board failed to satisfy the requirements of due process before rendering its decision on Preston's application for an annuity benefit.

The record on appeal reflects that on remand counsel for Preston submitted several exhibits, including papers relating to this litigation, legislative activities related to the Illinois Pension Code, and a transcript of a Board meeting regarding a fireman unrelated to Mr. Preston. The record does not reflect that counsel for Preston presented any evidence regarding an alleged connection between Mr. Preston's coronary artery disease and a specific incident relating to his work as a paramedic.

Following the remand hearing, the Board concluded Mr. Preston was not a fireman killed in the performance of duty pursuant to section 6-140, and therefore his widow was not entitled to a duty annuity benefit. In support of this conclusion, the Board found:

> "7. There is no language contained in 40 ILCS § 5/6-140
>
> that specifically states that the widow of a fireman who was
>
> receiving occupational disease disability benefits, is entitled to
>
> receive the annuity provided in that Section upon the death of the
>
> fireman.

6

8. Payment of a Duty Death Widow's Annuity benefit pursuant to 40 ILCS § 5/6-140 to the widow of a fireman who died while in receipt of occupational disease disability benefits would result in the widow receiving an annuity that was greater (75% of salary) than the occupational disease disability benefit that the fireman was receiving (65% of salary) prior to his death.

9. Ellen M. Preston did not produce sufficient medical evidence to support a finding that John T. Preston was prevented from subsequently resuming active service in the Chicago Fire Department as a result of his performance of an act or acts of duty."

In addition the Board's decision included the following conclusion:

"[I]t would not be consistent with the expressed intent of the Legislature to have granted a benefit to the widow of a fireman whose husband died while receiving occupational disease disability benefits that [were] greater than the disability benefit that the husband was receiving while he was alive."

Thereafter, on January 6, 2005, Preston filed a memorandum in the circuit court in support of her complaint for administrative review of the Board's decision. In that memorandum, Preston contended that "[a] duty disability benefit is the same as an occupational disease disability benefit" and that "widows of both duty and occupationally disabled firemen are entitled to the same benefits of section 6-140." The circuit court upheld the Board's decision denying

7

Preston's request for a duty annuity. In support of its holding, the court explained:

"The Retirement Board correctly points out that the Pension Code does not provide benefits to widows greater than the benefits firemen are entitled to receive while still alive. The court finds this argument persuasive. John Preston was not awarded a duty disability which would have entitled him to 75% of his salary while still living and which would have made his widow eligible for 75% of his salary upon his death. John Preston was awarded an occupational disability which entitled him to 65% of his salary while living. There is no provision in the Pension Code that would allow Ellen Preston to receive 'Death in the line of duty' benefits at 75% of her husband's salary, and no provision in the Pension Code that would allow Ellen Preston to continue to receive 65% of her husband's salary. ***

In cities with over 500,000 people, the Illinois legislature has chosen to award a higher benefit to firemen eligible for duty disability. Therefore, a duty disability and an occupational disability are clearly not the same benefit. *** This court agrees with the Retirement Board that Ellen Preston is not eligible to receive greater benefits than her spouse was eligible to receive while he was still living."

Carol Rokosik

8

Carol Rokosik is the widow of Edward D. Rokosik (Mr. Rokosik). Mr. Rokosik began working for the Chicago fire department in October 1978. In September 1998, Mr. Rokosik was diagnosed with kidney cancer. Following this diagnosis, Mr. Rokosik applied for an occupational disability benefit, and in February 2000 the Board conducted an evidentiary hearing on that application.

At that hearing, Mr. Rokosik testified that he developed his cancer during the time that he was in service with the Chicago fire department. Mr. Rokosik indicated that he had been exposed to heat, noxious fumes and gases while employed as a firefighter. The following exchange then took place between Mr. Rokosik and the Board's attorney:

"Q. Do you have any specific incidents that you would point to?

A. No, sir.

Q. You are just talking about the cumulative effect of exposure?

A. Yes."

Board physician Dr. Motto testified that he examined Mr. Rokosik and reviewed his medical records. Dr. Motto opined that Mr. Rokosik was not able to perform his duties as a firefighter "because of his kidney cancer and the resultant need for surgery and other treatments." In addition, Dr. Motto testified that several medical studies he had reviewed found an increased risk of kidney cancer in firefighters and indicated "a connection between an activity as a firefighter and the development of kidney cancer."

At the conclusion of the hearing, the Board granted Mr. Rokosik an occupational disease disability benefit pursuant to section 6-151.1 of the Pension Code (40 ILCS 5/6-151.1 (West 2000)), and upon the motion of one of the Board members, found that the disability was

permanent. The Board's "Decision and Findings of Facts," dated February 16, 2000, states that Mr. Rokosik "is unable to perform his duties in the Chicago Fire Department by reason of his development of a type of cancer which *may* be caused by exposure to heat, radiation or a known carcinogen as defined by the International Agency for Research on Cancer." (Emphasis added.)

Mr. Rokosik died in July 2003; the death certificate states the cause of death was kidney cancer. Thereafter, Rokosik submitted an application for widow's annuity.

Following a hearing on Rokosik's application, the Board concluded Rokosik was eligible to receive a non-duty annuity pursuant to section 6-141.1 of the Pension Code but had not produced sufficient evidence to prove she was entitled to receive a duty annuity pursuant to section 6-140 of the Code. In support of this conclusion, the Board found that Mr. Rokosik "died from kidney cancer which was not directly related to his performance of an act or acts of duty." In addition, the Board noted that widows of firemen who were in receipt of occupational disease disability benefits (at the time of their deaths) are not entitled to widow's annuities under section 6-140 of the Code.

Thereafter, in October 2003, Rokosik filed a complaint for administrative review of the Board's decision in the circuit court. The circuit court upheld the Board's decision in an April 22, 2005, memorandum opinion and order, following the same reasoning which it applied in reviewing Preston's complaint for administrative review.

Rokosik and Preston filed separate appeals of the circuit court orders denying them duty annuities. In addition to seeking review of the denial of a duty annuity, Preston's appeal sought review of the trial court's order dismissing her request for a writ of mandamus. On July 29, 2005,

10

1-05-1501 & 1-05-1502 (consolidated)

this court consolidated these two appeals pursuant to an agreed motion filed by plaintiffs' counsel.

ANALYSIS

Plaintiffs maintain on appeal that "the resolution of this case depends, not upon evidence heard by the Board or even application of those facts to the law (a mixed question of fact and law to which a clearly erroneous standard should apply), but upon the purely legal question of the proper interpretation of the statutory provisions governing annuity benefits for the widows of firefighters found to be disabled by a job related causation."  Specifically, plaintiffs contend that because their husbands were receiving occupational disability benefits at the time of their deaths for illnesses which permanently prevented them from returning to active service, plaintiffs are, as a matter of law, entitled to a duty annuity under section 6-140.  Accordingly, plaintiffs argue, the Board's decision denying them duty death benefits is subject to de novo review.

Section 6-140 of the Code states in relevant part:

"The annuity for the widow of a fireman whose death

results from *the performance of an act or acts of duty* shall be an

amount equal to 50% of the current annual salary attached to the

classified position to which the fireman was certified at the time of

his death and 75% thereof after December 31, 1972.

Unless *the performance of an act or acts of duty* results

directly in the death of the fireman, or *prevents him from*

*subsequently resuming active service in the fire department*, the

annuity herein provided shall not be paid; nor shall such annuities

11

1-05-1501 & 1-05-1502 (consolidated)

> be paid unless the widow was the wife of the fireman at the time of
> the act or acts of duty which resulted in his death." (Emphasis
> added.) 40 ILCS 5/6-140 (West 2004).

Section 6-110 defines "act of duty" as:

> "Any act imposed on an active fireman by the ordinances of a city,
> or by the rules or regulations of its fire department, or any act
> performed by an active fireman while on duty, having for its direct
> purpose the saving of the life or property of another person." 40
> ILCS 5/6-110 (West 2004).

The plain language of section 6-140 of the Code thus provides that in order to receive a duty annuity, a widow of a deceased fireman must establish that "the performance of an act or acts of duty" either directly resulted in the death of her husband or prevented him from resuming active service in the fire department. 40 ILCS 5/6-140 (West 2004). This court, in construing section 6-140, has clarified that in the latter situation a widow must establish the act or acts of duty in question permanently caused the fireman to be unable to return to active duty. Bertucci v. Retirement Board of the Firemen's Annuity & Benefit Fund, 351 Ill. App. 3d 368, 373-74 (2004); Barry v. Retirement Board of the Firemen's Annuity & Benefit Fund, 357 Ill. App. 3d 749, 768 (2005) (following Bertucci). Thus, contrary to plaintiffs' position, resolution of whether the Board properly denied their requests for duty annuities does depend on evidence presented to the Board and whether the Board properly applied section 6-140 of the Code to that evidence. Accordingly, we apply the clearly erroneous standard to our review of plaintiffs' appeal. See Barry, 357 Ill. App. 3d at 764-65 (whether Board properly construed and applied section 6-140 in

12

concluding that widows were not entitled to duty death benefits presents a mixed question of law and fact subject to the clearly erroneous standard of review).

With respect to Preston's claim for a duty annuity, the Board found that she "did not produce sufficient medical evidence to support a finding that John T. Preston was prevented from subsequently resuming active service in the Chicago Fire Department as a result of his performance of an act or acts of duty." We have reviewed the evidence presented to the Board at the remand hearing on Preston's claim for a duty annuity and find no basis for disturbing this finding. We recognize that Mr. Preston suffered a heart attack while on duty and that the Board thereafter granted him an occupational disability benefit. Furthermore, we are mindful that the Board's written decision granting him an occupational disability benefit stated that he was unable to perform his duties in the Chicago fire department by reasons of heart disease resulting solely from "his service as a fireman." We emphasize, however, that the Board's decision did not state that Mr. Preston's heart disease resulted from "an act or acts of duty."

As noted above, section 6-110 of the Code defines "act of duty" as "[a]ny act imposed on an active fireman by the ordinances of a city, or by the rules or regulations of its fire department" as well as "any act performed by an active fireman while on duty, having for its direct purpose the saving of the life or property of another person." 40 ILCS 5/6-110 (West 2004). The evidence before the Board in the instant case reflects that Mr. Preston suffered a heart attack shortly after climbing stairs at the firehouse. Preston, however, presented no evidence to the Board indicating that an act undertaken by her husband in an attempt to save a person or the property of a person caused his heart disease or prevented him from returning to active service. Furthermore, Preston presented no evidence to the Board indicating that the performance of an

13

act imposed upon her husband by city ordinance or by a rule or regulation of the fire department caused him to contract the heart disease which prevented him from returning to work and of which he ultimately died. In short, while Preston did present the Board with its own finding, made at her husband's occupational disability hearing, that Mr. Preston was rendered permanently disabled by reasons of heart disease resulting solely from his "service as a fireman," she did not present the Board with evidence indicating that a specific act or acts of duty rendered him disabled.

With respect to Rokosik's claim for a duty annuity, the Board found that Mr. Rokosik "died of kidney cancer which was not directly related to his performance of an act or acts of duty." We have reviewed the evidence before the Board at the time it rendered its decision and find no basis for disturbing this finding. We recognize, as plaintiffs note in their brief, that Board physician Dr. Motto testified at the hearing on Mr. Rokosik's application for duty disability that medical studies he had reviewed found an increased risk of kidney cancer in firefighters and indicated "a connection between an activity as a firefighter and the development of kidney cancer." We note, however, that Rokosik presented no evidence to the Board indicating that a specific act performed by her husband in an attempt to save a person or the property of a person caused his kidney cancer or prevented him from returning to active service. Furthermore, Rokosik presented no evidence to the Board indicating that the performance of an act imposed upon Mr. Rokosik by city ordinance or by a rule or regulation of the fire department caused him to contract the kidney cancer which prevented him from returning to work and of which he ultimately died.

Plaintiffs' primary contention on appeal, as noted earlier, is that they are each entitled to a

1-05-1501 & 1-05-1502 (consolidated)

duty annuity under section 6-140 of the Code, as a matter of law, because their husbands were receiving occupational disability benefits, at the time of their deaths, for diseases which permanently prevented them from returning to active duty. In essence, plaintiffs ask us to construe section 6-140 to automatically entitle widows of firemen to a duty annuity if their husbands were receiving an occupational disability benefit, at the time of their deaths, for a disease or condition which permanently prevented them from returning to active service.

"The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature." Midstate Siding & Window Co. v. Rogers, 204 Ill. 2d 314, 320 (2003). "To do so, we examine the language of the statute, the most reliable indicator of the legislature's objectives in enacting the law." Rogers, 204 Ill. 2d at 320. "We afford the language of the statute its plain and ordinary meaning [citation] and construe the statute as a whole." Rogers, 204 Ill. 2d at 320. "Words and phrases must not be viewed in isolation but must be considered in light of other relevant provisions of the statute." Rogers, 204 Ill. 2d at 320. "We also presume that in enacting the statute the legislature did not intend absurdity, inconvenience, or injustice." Rogers, 204 Ill. 2d at 320.

The plain language of section 6-140 does not state that the widow of a fireman who was receiving occupational disability benefits at the time of his death for a permanent disability is automatically entitled to a duty annuity. Plaintiffs acknowledge in their reply brief that section 6-140 does not specifically address the widows of occupationally disabled firemen. They argue, however, that a review of case law and other related statutory provisions supports their construction of section 6-140.

To support their contention that the fact that their husbands were receiving occupational

15

disabilities at the time of their deaths entitled plaintiffs to a duty annuity, plaintiffs cite our recent holdings in Barry and Bertucci that the widow of a fireman who was receiving duty disability at the time of his death is entitled to a duty annuity if she can establish that her husband's disability permanently prevented him from returning to active service. Plaintiffs then argue that "[a] duty disability benefit is the same as an occupational disease disability benefit" and that, therefore, widows such as themselves, whose husbands were receiving occupational disability benefits at the time of their deaths and whose disabling conditions prevented them from returning to active service, are automatically entitled to receive a duty annuity.

Plaintiffs' argument is based upon two separate premises. First, plaintiffs' argument is based on the premise that the widow of a fireman who was receiving a duty disability benefit at the time of his death is entitled to a duty annuity if she can establish that her husband's disability permanently prevented him from returning to active duty. We agree with this premise - indeed it is essentially the rule construing section 6-140 of the Code, which we noted above and which this court recently applied in Barry and Bertucci. See Barry, 357 Ill. App. 3d at 768; Bertucci, 351 Ill. App. 3d at 373-74.

The second premise underlying plaintiffs' argument is that the requirements for establishing a duty disability and an occupational disability are the same and, thus, that the grant of an occupational disability benefit necessarily entitles a widow to a duty annuity when her husband's occupational disability permanently prevents him from returning to active duty. Specifically plaintiffs contend "Duty Disability Benefits in Section 6-151 are identical in purpose to Occupational Disability Benefits in Section 6-151.1 of the Code. The Retirement Board's attempt to make a distinction is meritless. The fact is, the two disability benefits are for job

16

related injuries or illnesses. The disability standard is the same for both benefits. [Citation.] The proof of disability is the same."

We reject this second premise as a comparison of the two statutory provisions governing duty disability and occupational disability reflects that the requirements for establishing eligibility for those benefits are not the same.

Section 6-151, which provides for duty disability benefits, states in relevant part:

"An active fireman who is or becomes disabled on or after the effective date as the result of a specific injury, or of cumulative injuries, or of specific sickness incurred in or resulting from an act or acts of duty, shall have the right to receive duty disability benefit during any period of such disability for which he does not receive or have a right to receive salary, equal to 75% of his salary at the time the disability is allowed." 40 ILCS 5/6-151 (West 2004).

Section 6-151.1, which provides for occupational disability benefits, states in relevant part:

"The General Assembly finds and declares that service in the Fire Department requires that firemen, in times of stress and danger, must perform unusual tasks; that by reason of their occupation, firemen are subject to exposure to great heat and to extreme cold in certain seasons while in performance of their duties; that by reason of their employment firemen are required to work in the midst of and are subject to heavy smoke fumes and

17

carcinogenic, poisonous, toxic or chemical gases from fires; and that in the course of their rescue and paramedic duties firemen are exposed to disabling infectious diseases, including AIDS, hepatitis C, and stroke. The General Assembly further finds and declares that all the aforementioned conditions exist and arise out of or in the course of such employment.

Any active fireman who has completed 7 or more years of service and is unable to perform his duties in the Fire Department by reason of heart disease, tuberculosis, any disease of the lungs or respiratory tract, AIDS, hepatitis C, or stroke resulting from his service as a fireman, shall be entitled to receive an occupational disease disability benefit during any period of such disability for which he does not have a right to receive salary.

Any active fireman who has completed 7 or more years of service and is unable to perform his duties in the fire department by reason of a disabling cancer, which develops or manifests itself during a period while the fireman is in the service of the department, shall be entitled to receive an occupational disease disability benefit during any period of such disability for which he does not have a right to receive salary. In order to receive this occupational disease disability benefit, the type of cancer involved must be a type which may be caused by exposure to heat, radiation

or a known carcinogen as defined by the International Agency for

Research on Cancer.

\*\*\*

The occupational disease disability benefit shall be 65% of

the fireman's salary at the time of his removal from the Department

payroll." 40 ILCS 5/6-151.1 (West 2004).

The plain language of section 6-151.1 states the nature of firemen's occupation exposes them to an inherently dangerous environment and provides that firemen who have completed at least seven years of service may potentially be entitled to an occupational disability. Section 6-151.1 provides that some of what a fireman must establish in order to receive an occupational disability benefit is contingent upon the nature of the disease, illness, or condition giving rise to the disability. Specifically, the second paragraph of section 6-151.1 states that a fireman who develops heart disease, tuberculosis, any disease of the lungs or respiratory tract, AIDS, hepatitis C, or stroke may qualify for an occupational disability benefit if he can establish that the subject disease or condition prevented him from being able to perform his duties and "result[ed] *from his service as a fireman*." (Emphasis added.) 40 ILCS 5/6-151.1 (West 2004). On the other hand, the third paragraph of section 6-151.1 states that a fireman who develops a certain type of cancer may potentially qualify for an occupational disability benefit and does not require that he establish that the cancer resulted from his service as a fireman. 40 ILCS 5/6-151.1 (West 2004).

Regardless of the nature of the disease, a fireman will not be eligible for an occupational disability benefit unless he has completed seven years of service. This seven-year requirement reflects that occupational disability benefits were intended to compensate firemen for diseases

19

likely to be contracted as a result of repeated exposure to the inherently dangerous conditions which firemen confront in the course of their service. Finally, the benefit provided for occupational disability is 65% of a firemen's salary. 40 ILCS 5/6-151.1 (West 2004).

In contrast to an occupational duty disability benefit under section 6-151.1 of the Code, which requires a fireman with a disease other than cancer to establish that the disease resulted from his "service as a fireman," a section 6-151 duty disability benefit requires a fireman to establish that he became disabled "as the result of a specific injury, or of cumulative injuries, or of specific sickness incurred in or resulting from *an act or acts of duty*." (Emphasis added.) 40 ILCS 5/6-151 (West 2004). Furthermore, whereas an occupational duty disability compensates firemen who are repeatedly exposed to inherently dangerous environments and conditions and is not awarded to firemen who have completed less than seven years of service, a duty disability seeks to compensate firemen for injuries or conditions sustained as a result of specific, identifiable act or acts of duty and is not conditioned upon completion of a fixed number of years of service. Finally, the benefit provided for duty disability is not 65% of a fireman's salary but, rather, is 75% of a fireman's salary. 40 ILCS 5/6-151 (West 2004). In short, contrary to plaintiffs' contention, the requirements for establishing entitlement to occupational and duty disability benefits are not the same. Accordingly, for the foregoing reasons, we reject plaintiffs' argument that section 6-140 of the Code, the statutory provision governing duty annuities, entitles widows of occupationally disabled firemen to receive a duty annuity as a matter of law when their husbands' disability permanently prevented them from resuming active service.

We note that we do not hold today that a widow of a firefighter who was receiving an occupational disability benefit at the time of his death (i.e., 65% of her husband's salary) may

20

never qualify for a duty annuity (i.e., 75% of her husband's salary), and we reject the *dicta* included in the decisions of the Board and the circuit court supporting such a rule. We emphasize that eligibility for a duty annuity requires review of the individual facts of a given case in order to determine whether a widow's husband's performance of an act or acts of duty permanently prevented him from resuming active service in the fire department. We can envision factual contexts in which the passage of time and/or advancements in medical science could enable the widow of a fireman who was receiving an occupational duty disability to establish, following her husband's death, that a specific act or acts of duty caused her husband's disease, sickness or condition. Such factual context is not presented by the instant case. Accordingly, based upon the foregoing discussion, we conclude that the Board's denial of duty annuities to plaintiffs was not clearly erroneous.

In addition to challenging the Board's decision granting her a non-duty annuity rather than a duty annuity, Preston argues on appeal that the trial court erred by dismissing count II of her complaint for administrative review. Count II of her complaint, as noted above, alleged that "[a] substantial number of widows whose husbands died while in receipt of duty disability benefits have a clear legal right to Section 6-140 widow's annuity" and alleged that a substantial number of widows "are now receiving substantially less because the Board failed to afford a due process hearing." Based on the these allegations, Preston requested a writ of mandamus ordering the Board "to notify all potential widows of their rights under the [Code] and to conduct a hearing conforming to fair notice and due process."

A party seeking a writ of mandamus to compel a defendant to perform an act or duty which does not affect the public at large must establish, among other things, that it previously

demanded performance of that act or that the making of such a demand would have been unavailing. Murphy v. City of Park Ridge, 298 Ill. 66, 71-72 (1921); People ex rel. Edelman v. Hunter, 350 Ill. App. 75, 78 (1953).

Preston's complaint in the instant action does not seek to compel the Board to undertake an action which affects the public at large and does not allege that she demanded the Board "to notify all potential widows of their rights under the [Pension Code] and to conduct a hearing conforming to fair notice and due process." Furthermore, Preston's complaint does not allege any basis for concluding that a demand upon the Board for such action would have been unavailing. Accordingly, we affirm the dismissal of count II of Preston's complaint.

CONCLUSION

Based on the foregoing reasons, we affirm the Board's decisions denying plaintiffs duty annuities, the trial court's decisions upholding those decisions by the Board, and the trial court's dismissal of count II of Preston's complaint.

Affirmed.

O'BRIEN, P.J., and GALLAGHER, J., concur.

1-05-1501 & 1-05-1502 (consolidated)