# Illinois Official Reports

## Supreme Court

---

### *Bremer v. City of Rockford*, 2016 IL 119889

---

| | |
|---|---|
| Caption in Supreme Court: | WILLIAM BREMER, Appellant and Cross-Appellee, v. THE CITY OF ROCKFORD, Appellee and Cross-Appellant. |
| Docket Nos. | 119889, 119912 cons. |
| Filed<br>Modified upon<br>denial of rehearing | December 30, 2016<br><br>April 7, 2017 |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Winnebago County, the Hon. J. Edward Prochaska, Judge, presiding. |
| Judgment | Appellate court judgment affirmed in part and vacated in part; judgment entered for defendant. |
| Counsel on Appeal | Thomas G. Ruud, of Thomas G. Ruud & Associates, P.C., of Rockford, for appellant.<br><br>Paul A. Denham, of Rockford, for appellee.<br><br>Richard K. Johnson and Frank J. Bertuca, of Katz Friedman Eagle Eisenstein Johnson & Bareck, P.C., of Chicago, for *amicus curiae* Illinois Trial Lawyers Association. |

Justices          JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Freeman, Garman, Burke, and Theis concurred in the judgment and opinion.

Justice Kilbride concurred in part and dissented in part, with opinion.

**OPINION**

¶ 1      In *Krohe v. City of Bloomington*, 204 Ill. 2d 392 (2003), this court held that the phrase "catastrophic injury" in section 10(a) of the Public Safety Employee Benefits Act (Benefits Act) (820 ILCS 320/10(a) (West 2008)) is synonymous with an injury resulting in a line-of-duty disability pension under section 4-110 of the Illinois Pension Code (Pension Code) (40 ILCS 5/4-110 (West 2008)). The primary issue in this case is whether the phrase "catastrophic injury" in section 10(a) is also synonymous with an injury resulting in an occupational disease disability pension under section 4-110.1 of the Pension Code (40 ILCS 5/4-110.1 (West 2008)). Based on our decision in *Krohe* and subsequent cases defining "catastrophic injury," we hold that the legislature did not intend for that phrase to be synonymous with a disease resulting in the award of an occupational disease disability pension.

¶ 2                                 I. BACKGROUND

¶ 3      Defendant, the City of Rockford, hired plaintiff, William Bremer, as a firefighter in 1976. In 2004, plaintiff filed with the City of Rockford firefighters' pension board (Board) an application for an occupational disease disability pension under section 4-110.1 of the Pension Code (40 ILCS 5/4-110.1 (West 2004)). The Board granted plaintiff's application, concluding that he satisfied the statutory requirements for an occupational disease disability pension by establishing that he was a firefighter with five or more years of creditable service who was unable to perform his duties due to heart disease resulting from his service as a firefighter. The Board found that a preponderance of the medical evidence established that plaintiff's cardiomyopathy resulted from the performance of his duties as a firefighter. Plaintiff's pension became effective in January 2005.

¶ 4      Defendant paid health insurance premiums for plaintiff and his wife through February 2008, as required by a city ordinance. On February 21, 2008, defendant informed plaintiff that it would no longer pay the premiums as of March 1, 2008, and that plaintiff would be required to pay the premiums if he wished to maintain the benefits.

¶ 5      Plaintiff then applied to defendant for continuing health insurance benefits under section 10 of the Benefits Act. Section 10 provides premium-free health insurance benefits for a public safety employee, his or her spouse, and any dependent children when the employee is catastrophically injured or killed in the line of duty under the circumstances listed in section 10(b). 820 ILCS 320/10 (West 2008). Along with his application, plaintiff submitted a copy of the Board's decision awarding him an occupational disease disability pension. Defendant determined that plaintiff did not establish that he suffered a catastrophic injury as required by

section 10(a) of the Benefits Act (820 ILCS 320/10(a) (West 2008)), based on his receipt of an occupational disease disability pension. Accordingly, defendant denied plaintiff's application for continuing health insurance benefits.

¶ 6 Plaintiff responded by filing a two-count complaint in the Winnebago County circuit court, seeking a declaratory judgment and attorney fees. In count I, plaintiff sought a declaration on the meaning of the term "catastrophic injury" in section 10(a) of the Benefits Act. Plaintiff asked the court to declare that the award of an occupational disease disability pension under section 4-110.1 of the Pension Code establishes a catastrophic injury within the meaning of section 10(a). Plaintiff also sought a declaration that defendant was required to pay his future health insurance premiums and to reimburse him for any premiums he paid in 2008. In count II, plaintiff sought attorney fees and costs under the Attorneys Fees in Wage Actions Act (Wage Actions Act) (705 ILCS 225/0.01 *et seq.* (West 2008)).

¶ 7 The parties filed cross-motions for summary judgment on count I. The circuit court determined that plaintiff was entitled to continuing health insurance benefits under section 10 of the Benefits Act based on his award of an occupational disease disability pension under section 4-110.1 of the Pension Code. The circuit court, therefore, granted plaintiff's motion for summary judgment on count I, denied defendant's motion for summary judgment, ordered defendant to reinstate plaintiff's health care benefits, and directed defendant to reimburse plaintiff for the premiums he paid after defendant denied his application for benefits.

¶ 8 The circuit court subsequently granted defendant's motion for summary judgment on count II. The circuit court held that plaintiff's postemployment health insurance benefits under the Benefits Act do not constitute "wages earned and due and owing according to the terms of the employment," as required to recover attorney fees under the Wage Actions Act.

¶ 9 The circuit court also granted plaintiff's motion for leave to add a third count to his complaint. In count III, plaintiff alleged that he could not afford health insurance during the period when defendant declined to pay his insurance premiums. Plaintiff sought reimbursement for over $39,000 in medical expenses that he and his wife incurred while they were uninsured. Plaintiff also sought over $38,000 for the premiums defendant failed to pay, alleging that he was deprived of the value of those premiums and that defendant was unjustly enriched by not paying them.

¶ 10 Defendant filed a combined motion to dismiss count III under sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2008)). The circuit court granted defendant's section 2-615 motion to dismiss plaintiff's claim for unpaid premiums. The circuit court also dismissed plaintiff's claim for approximately $36,000 in medical expenses under section 2-619. Those expenses were incurred as a result of an automobile accident involving plaintiff's wife, and they were paid under plaintiff's automobile insurance policy. The circuit court determined plaintiff lacked standing to seek recovery of those expenses under the Rights of Married Persons Act (750 ILCS 65/15 (West 2008)). The circuit court, however, entered judgment for plaintiff in the amount of $6381.05 plus court costs for health insurance premiums and out-of-pocket medical expenses paid by plaintiff.

¶ 11 Defendant appealed the circuit court's award of summary judgment for plaintiff on count I. Plaintiff filed a cross-appeal challenging the award of summary judgment for defendant on count II and the dismissal of portions of count III.

¶ 12    The appellate court held that the circuit court erred in granting summary judgment for plaintiff on count I. The appellate court agreed with the circuit court the "catastrophic injury" requirement in section 10(a) of the Benefits Act was satisfied by the award of an occupational disease disability pension under section 4-110.1 of the Pension Code, but held that there was a question of material fact on the section 10(b) element of whether plaintiff's injury resulted from his response to what was reasonably believed to be an emergency. 2015 IL App (2d) 130920, ¶ 45. That question of material fact precluded summary judgment for plaintiff on his claim for continuing health insurance benefits under section 10 of the Benefits Act. 2015 IL App (2d) 130920, ¶ 55.

¶ 13    The appellate court agreed with the circuit court that plaintiff could not recover attorney fees under the Wage Actions Act because postemployment health insurance benefits under the Benefits Act do not qualify as "wages earned and due and owing according to the terms of the employment." 705 ILCS 225/1 (West 2008). 2015 IL App (2d) 130920, ¶ 59. Defendant therefore was entitled to summary judgment on count II because plaintiff could not prevail on his Wage Actions Act claim even if he were to receive continuing health insurance benefits under the Benefits Act. 2015 IL App (2d) 130920, ¶ 60. The appellate court further held that plaintiff's claim in count III for unpaid health insurance premiums and medical expenses was not ripe for adjudication given the reversal of the circuit court's judgment requiring defendant to pay plaintiff's health insurance premiums under the Benefits Act. Therefore, the circuit court's judgment on count III was vacated. 2015 IL App (2d) 130920, ¶ 62.

¶ 14    Justice McLaren dissented from the judgment on the Benefits Act claim, asserting that the award of an occupational disease disability pension is not sufficient to satisfy the "catastrophic injury" element of section 10(a). 2015 IL App (2d) 130920, ¶¶ 71-73 (McLaren, J., concurring in part and dissenting in part). Justice McLaren concluded that defendant was entitled to summary judgment because in the absence of any medical evidence, there was no genuine issue of material fact on whether plaintiff suffered a catastrophic injury. 2015 IL App (2d) 130920, ¶ 76 (McLaren, J., concurring in part and dissenting in part).

¶ 15    We allowed petitions for leave to appeal filed by both plaintiff and defendant (Ill. S. Ct. R. 315 (eff. Jan. 1, 2015)) and consolidated the appeals for review. We also allowed the Illinois Trial Lawyers Association to file an *amicus curiae* brief. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 16                                    II. ANALYSIS

¶ 17    The primary issue in this appeal is whether plaintiff's award of an occupational disease disability pension under section 4-110.1 of the Pension Code establishes that he suffered a "catastrophic injury" within the meaning of section 10(a) of the Benefits Act. Section 10 of the Benefits Act provides:

> "(a) An employer who employs a full-time law enforcement, correctional or correctional probation officer, or firefighter, who, on or after the effective date of this Act suffers a catastrophic injury or is killed in the line of duty shall pay the entire premium of the employer's health insurance plan for the injured employee, the injured employee's spouse, and for each dependent child of the injured employee until the child reaches the age of majority or until the end of the calendar year in which the child reaches the age of 25 if the child continues to be dependent for support or the child is a full-time or part-time student and is dependent for support. ***

(b) In order for the law enforcement, correctional or correctional probation officer, firefighter, spouse, or dependent children to be eligible for insurance coverage under this Act, the injury or death must have occurred as the result of the officer's response to fresh pursuit, the officer or firefighter's response to what is reasonably believed to be an emergency, an unlawful act perpetrated by another, or during the investigation of a criminal act." 820 ILCS 320/10 (West 2008).

¶ 18    Defendant observes that in *Krohe* and subsequent cases, this court construed the phrase "catastrophic injury" in section 10(a) as synonymous with an injury resulting in a line-of-duty disability pension under section 4-110 of the Pension Code. Defendant maintains that the award of an occupational disease disability pension cannot establish a "catastrophic injury" because the eligibility standards for that type of pension are different from the requirements for a line-of-duty disability pension. According to defendant, if the legislature had intended the award of an occupational disease disability pension to satisfy the "catastrophic injury" requirement in section 10(a) of the Benefits Act, it would have expressed that intent clearly. Defendant concludes that it is entitled to summary judgment on plaintiff's claim under the Benefits Act because there is no evidence showing he suffered a "catastrophic injury" as required by section 10(a).

¶ 19    Plaintiff contends that an occupational disease disability pension awarded under section 4-110.1 of the Pension Code is a line-of-duty disability pension because, by definition, it results from service as a firefighter and arises out of the course of employment. Plaintiff argues that his disability arose in the line of duty as a matter of law and is, therefore, a "catastrophic injury" within the meaning of section 10(a) of the Benefits Act.

¶ 20    This appeal arises from the circuit court's order granting plaintiff and denying defendant summary judgment on count I. Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2008). When, as here, the parties file cross-motions for summary judgment, they agree that only questions of law are involved and invite the court to decide the issues based on the record. *Nationwide Financial*, *LP v. Pobuda*, 2014 IL 116717, ¶ 24. We review summary judgment rulings *de novo*. *Gurba v. Community High School District No. 155*, 2015 IL 118332, ¶ 10.

¶ 21    As the parties acknowledge, we have previously construed the term "catastrophic injury" in section 10(a). In *Krohe*, the plaintiff firefighter was awarded a line-of-duty disability pension under section 4-110 of the Pension Code. After the plaintiff's employer declined his request for continuing health insurance benefits under the Benefits Act, plaintiff filed a complaint for declaratory relief. The circuit court ruled for plaintiff and required the continuation of his benefits under the Benefits Act. The appellate court affirmed. *Krohe*, 204 Ill. 2d at 394.

¶ 22    On appeal to this court, the sole issue was whether the phrase "catastrophic injury" in section 10(a) of the Benefits Act is synonymous with an injury resulting in a line-of-duty disability pension under section 4-110 of the Pension Code. *Krohe*, 204 Ill. 2d at 394. After concluding that the phrase "catastrophic injury" as used in section 10(a) is ambiguous, this court looked to the legislative history to determine its meaning. *Krohe*, 204 Ill. 2d at 395-97. This court held that the legislative history and debates "could not be clearer" on the meaning of

the phrase "catastrophically injured." *Krohe*, 204 Ill. 2d at 398. Based on the remarks in the legislative history, we held that the legislature intended the phrase "catastrophic injury" in section 10(a) to be "synonymous with an injury resulting in a line-of-duty disability under section 4-110 of the [Pension] Code." *Krohe*, 204 Ill. 2d at 400.

¶ 23 In *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 12, we reiterated that the phrase "catastrophic injury," as used in section 10(a), is a term of art meaning an injury resulting in a line-of-duty disability pension. An injury is declared "catastrophic" within the meaning of section 10(a) when a public safety employee is awarded a line-of-duty disability pension. *Nowak*, 2011 IL 111838, ¶ 12. We explained that one of the primary purposes of the Benefits Act is to continue employer-sponsored health insurance coverage when, due to a line-of-duty injury, a public safety employee has been forced to take a line-of-duty disability pension. *Nowak*, 2011 IL 111838, ¶ 17.

¶ 24 In *Village of Vernon Hills v. Heelan*, 2015 IL 118170, ¶ 23, this court stated that in construing the phrase "catastrophic injury" in section 10(a), we had "expressly equated the determination of a catastrophic injury with the award of a line-of-duty disability pension." A pension board's award of a line-of-duty disability pension establishes as a matter of law a catastrophic injury within the meaning of section 10(a) of the Benefits Act. *Heelan*, 2015 IL 118170, ¶ 25. In that case, the line-of-duty disability pension was awarded under section 3-114.1, which is the police officer equivalent of section 4-110. Accordingly, since 2003, this court has held consistently that the phrase "catastrophic injury" in section 10(a) is synonymous with an injury resulting in the award of a line-of-duty disability pension.

¶ 25 Plaintiff contends that his injury resulting in an occupational disease disability pension fits within the definition of a "catastrophic injury" as a matter of law because the injury occurred in the line of duty. Plaintiff maintains that his injury occurred in the line of duty because, to establish an occupational disease disability, he was required to show his injury resulted from his service as a firefighter and arose in the course of his employment.

¶ 26 As we already explained, however, the phrase "catastrophic injury" in section 10(a) is a term of art that has been defined specifically based on the legislative history and debates. A catastrophic injury in the context of section 10(a) means an injury resulting in the award of a line-of-duty disability pension. *Heelan*, 2015 IL 118170, ¶ 23. Plaintiff cannot establish a catastrophic injury under section 10(a) of the Benefits Act by simply showing that he suffered an injury resulting from his service as a firefighter or an injury that occurred in the course of his employment. Rather, he must establish an injury that resulted in a line-of-duty disability pension. See *Heelan*, 2015 IL 118170, ¶ 23; *Nowak*, 2011 IL 111838, ¶¶ 12, 17; *Krohe*, 204 Ill. 2d at 400.

¶ 27 Plaintiff also contends that the requirements for an occupational disease disability pension under section 4-110.1 of the Pension Code are essentially the same as those for a line-of-duty disability pension under section 4-110. Accordingly, plaintiff maintains that those two types of pensions should be treated the same for the purpose of awarding continuing health insurance benefits under the Benefits Act. Plaintiff concludes that this court should affirm the appellate court's holding that the award of an occupational disease disability pension satisfies the "catastrophic injury" requirement under section 10(a) of the Benefits Act.

¶ 28 Plaintiff is incorrect because this court has consistently defined "catastrophic injury" as being a term of art that means an injury resulting in a line-of-duty disability pension. An

occupational disease disability pension awarded under section 4-110.1 is not, by definition, a line-of-duty disability pension under section 4-110. Thus, plaintiff's argument is wrong on its face. We note, however, that plaintiff's argument is not even factually correct. Section 4-110 of the Pension Code, providing for a "line of duty" disability pension, states in pertinent part:

"If a firefighter, as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty or from the cumulative effects of acts of duty, is found *** to be physically or mentally permanently disabled for service in the fire department, so as to render necessary his or her being placed on disability pension, the firefighter shall be entitled to a disability pension ***. A firefighter shall be considered 'on duty' while on any assignment approved by the chief of the fire department, even though away from the municipality he or she serves as a firefighter, if the assignment is related to the fire protection service of the municipality." 40 ILCS 5/4-110 (West 2008).

¶ 29    Section 4-110.1, providing for an "occupational disease disability pension," provides in pertinent part:

"The General Assembly finds that service in the fire department requires firefighters in times of stress and danger to perform unusual tasks; that firefighters are subject to exposure to extreme heat or extreme cold in certain seasons while performing their duties; that they are required to work in the midst of and are subject to heavy smoke fumes, and carcinogenic, poisonous, toxic or chemical gases from fires; and that these conditions exist and arise out of or in the course of employment.

An active firefighter with 5 or more years of creditable service who is found *** unable to perform his or her duties in the fire department by reason of heart disease, stroke, tuberculosis, or any disease of the lungs or respiratory tract, resulting from service as a firefighter, is entitled to an occupational disease disability pension during any period of such disability for which he or she has no right to receive salary.

Any active firefighter who has completed 5 or more years of service and is unable to perform his or her duties in the fire department by reason of a disabling cancer, which develops or manifests itself during a period while the firefighter is in the service of the fire department, shall be entitled to receive an occupational disease disability benefit during any period of such disability for which he or she does not have a right to receive salary. In order to receive this occupational disease disability benefit, (i) the type of cancer involved must be a type which may be caused by exposure to heat, radiation or a known carcinogen as defined by the International Agency for Research on Cancer and (ii) the cancer must (and is rebuttably presumed to) arise as a result of service as a firefighter." 40 ILCS 5/4-110.1 (West 2008).

¶ 30    Our appellate court has previously considered whether the requirements for establishing a line-of-duty disability under section 6-151 of the Pension Code (40 ILCS 5/6-151 (West 2004)) are the same as those for an occupational disease disability under section 6-151.1 (40 ILCS 5/6-151.1 (West 2004)). *Rokosik v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 374 Ill. App. 3d 158, 168-71 (2007). Although sections 6-151 and 6-151.1 are applicable only to cities with a population over 500,000, the requirements in those provisions are similar to those in sections 4-110 and 4-110.1. In *Rokosik*, our appellate court observed that the occupational disease disability provision required service for a specific number of years,

which reflects an intent to compensate firefighters for diseases likely to be contracted from repeated exposure to the inherently dangerous conditions faced by firefighters. *Rokosik*, 374 Ill. App. 3d at 170. By contrast, the line-of-duty disability provision applies when a condition or injury results from an identifiable act or acts of duty, without any requirement of a certain number of years of service. *Rokosik*, 374 Ill. App. 3d at 171. Accordingly, our appellate court concluded that the requirements for establishing a section 6-151 line-of-duty disability are not the same as those for establishing a section 6-151.1 occupational disease disability. *Rokosik*, 374 Ill. App. 3d at 171.

¶ 31 The appellate court's analysis in *Rokosik* applies equally to sections 4-110 and 4-110.1. Sections 4-110 and 4-110.1 have different eligibility requirements. Most notably, section 4-110 does not require a certain number of years of service before claiming a line-of-duty disability pension, while section 4-110.1 requires at least five years of creditable service before a firefighter may seek an occupational disease disability pension. See 40 ILCS 5/4-110, 4-110.1 (West 2008). Under section 4-110, a line-of-duty pension is awarded based on a disability resulting from a specific act or acts of duty. 40 ILCS 5/4-110 (West 2008). By contrast, section 4-110.1 recognizes that firefighters work in dangerous conditions and provides compensation when a firefighter contracts one of the listed diseases from repeated exposure to those conditions over a set period of time. Under section 4-110.1, a firefighter must generally show the disease resulted from service as a firefighter, but in cases involving some types of cancer there is a rebuttable presumption that the disease arose from service as a firefighter. 40 ILCS 5/4-110.1 (West 2008).

¶ 32 The General Assembly has set forth different eligibility requirements for section 4-110 line-of-duty disability pensions and section 4-110.1 occupational disease disability pensions. Sections 4-110 and 4-110.1 of the Pension Code are separate provisions that employ different language in awarding disability pensions based on injuries or diseases suffered under different conditions. This court must construe the Benefits Act strictly in favor of defendant as the party subject to its operation because it created a new liability unknown at common law. *Nowak*, 2011 IL 111838, ¶¶ 19, 27. Under any reasonable construction, the eligibility standards provided in sections 4-110 and 4-110.1 are different.

¶ 33 In defining the phrase "catastrophic injury," this court has been concerned with resolving the ambiguity presented by the language of section 10(a) and identifying with a degree of certainty and predictability the types of injuries qualifying as "catastrophic." *Krohe*, 204 Ill. 2d at 397. In *Krohe*, *Nowak*, and *Heelan*, this court defined the phrase "catastrophic injury" in section 10(a) very specifically based on references in the legislative history and debates to "line-of-duty" disability provisions. Nothing in the legislative history indicates an intent to expand the definition of "catastrophic injury" to include other types of disability pensions awarded under other sections of the Pension Code.

¶ 34 As we recently observed in *Heelan*, the legislature has not altered our consistent construction of the phrase "catastrophic injury." Our construction of that term is considered part of the statute itself until the legislature amends it contrary to our interpretation. *Heelan*, 2015 IL 118170, ¶ 27. We cannot expand that definition to include injuries resulting in the award of occupational disease disability pensions under section 4-110.1 without revising our settled determination of the legislature's intent in enacting that provision. While there may be legitimate policy reasons for expanding the definition of "catastrophic injury," any such

change must come from the legislature, not this court. Accordingly, based on our decisions in *Krohe* and subsequent cases, we conclude that the legislature did not intend the phrase "catastrophic injury" in section 10(a) of the Benefits Act to be synonymous with a disease resulting in the award of an occupational disease disability pension as defined by section 4-110.1 of the Pension Code. Given our construction of section 10(a) of the Benefits Act, we conclude that the circuit court erred in granting plaintiff summary judgment on count I based on his award of an occupational disease disability pension.

¶ 35    Defendant argues that it is entitled to summary judgment on count I because plaintiff has failed to establish a catastrophic injury as required by section 10(a). We agree. The parties chose to litigate plaintiff's declaratory judgment action through cross-motions for summary judgment. They therefore have agreed that no factual issues exist and that the decision turns on the resolution of purely legal issues. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 432 (2010). Here, that was entirely appropriate. It is undisputed that plaintiff was not awarded a line-of-duty disability pension under section 4-110 of the Pension Code; rather, he was awarded an occupational disease disability pension under section 4-110.1. Therefore, if the definition of "catastrophic injury" includes injuries resulting in occupational disease disability pensions under section 4-110.1, plaintiff is entitled to summary judgment. If the definition of "catastrophic injury" is limited to injuries resulting in a line-of-duty disability pension under section 4-110, defendant is entitled to summary judgment. As we have held that the definition of "catastrophic injury" is limited to those injuries *resulting in* a line-of-duty disability pension (*Heelan*, 2015 IL 118170, ¶ 23; *Nowak*, 2011 IL 111838, ¶¶ 12, 17; *Krohe*, 204 Ill. 2d at 400) and it is undisputed that plaintiff was not awarded a line-of-duty disability pension, defendant is entitled to summary judgment on count I. We therefore enter judgment for defendant on count I. See Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994).

¶ 36    Plaintiff further argues that the appellate court erred in upholding the trial court's grant of summary judgment to defendant on count II. In this count, plaintiff argued that he was entitled to attorney fees and costs under the Wage Actions Act (705 ILCS 225/0.01 *et seq.* (West 2008)). This claim, however, was contingent on plaintiff prevailing in his argument on count I that he suffered a "catastrophic injury" for purposes of the Benefits Act. As we have held that defendant is entitled to summary judgment on count I, we also hold that defendant was properly awarded summary judgment on count II.

¶ 37    Plaintiff additionally maintains that the circuit court erred in dismissing portions of count III of his complaint. In count III, plaintiff sought reimbursement for medical expenses he and his wife incurred while they were uninsured. Plaintiff also sought health insurance premiums defendant failed to pay, alleging that he was deprived of the value of those premiums and that defendant was unjustly enriched. The circuit court dismissed portions of plaintiff's claims in count III but entered judgment for plaintiff in the amount of $6381.05 plus court costs for premiums and out-of-pocket medical expenses. The appellate court vacated the circuit court's judgment on count III because it was not ripe for adjudication until it was determined whether plaintiff would prevail on count I.

¶ 38    As with count II, plaintiff's claims in count III depended upon his establishing a right to continuing health insurance benefits under section 10 of the Benefits Act. We have reversed the circuit court's award of summary judgment for plaintiff on count I. Plaintiff did not establish a right to continuing health insurance benefits under section 10. The appellate court

therefore properly vacated the circuit court's judgment on count III. Because defendant's success on count I precludes plaintiff's success on count III, we enter summary judgment for defendant on count III. See Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994).

¶ 39                                   III. CONCLUSION

¶ 40       For the foregoing reasons, we affirm the appellate court's judgment on count I of plaintiff's complaint, which reversed the circuit court's entry of summary judgment for plaintiff, but we do so for reasons other than those given by the appellate court. We enter summary judgment for defendant on count I. We affirm the appellate court's judgment on count II, which affirmed the circuit court's judgment for defendant on that count. We affirm the appellate court's judgment on count III, which vacated the circuit court's rulings on that count, and we enter judgment for defendant on count III. We vacate that portion of the appellate court's judgment that remanded for further proceedings.

¶ 41       Appellate court judgment affirmed in part and vacated in part; judgment entered for defendant.

¶ 42       JUSTICE KILBRIDE, concurring in part and dissenting in part:

¶ 43       I agree with the majority that the phrase "catastrophic injury" in section 10(a) of the Benefits Act is not synonymous with a disease resulting in the award of an occupational disease disability pension as defined by section 4-110.1 of the Pension Code (40 ILCS 5/4-110.1 (West 2008)). Plaintiff's award of an occupational disease disability pension is not sufficient, by itself, to establish the catastrophic injury requirement of section 10(a). Plaintiff, therefore, is not entitled to summary judgment on his claim for continuing health insurance benefits in this case because he cannot establish the section 10(a) catastrophic injury requirement based solely on his award of an occupational disease disability pension.

¶ 44       I disagree, however, with the majority's determination that the City of Rockford is entitled to summary judgment in this case. In my view, this case should be remanded for further proceedings to give plaintiff an opportunity to establish his right to continuing health insurance coverage under the Benefits Act.

¶ 45       As the majority observes, the parties chose to litigate plaintiff's declaratory judgment action through cross-motions for summary judgment. They have, therefore, agreed that no factual issues exist and the decision turns on the resolution of purely legal issues. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 432 (2010). The filing of cross-motions for summary judgment does not, however, establish that there is no issue of material fact, and it does not obligate a court to render summary judgment. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. Summary judgment is a drastic means of disposing of litigation, and it should be granted only when the movant's right to judgment is clear and free from doubt. *Seymour v. Collins*, 2015 IL 118432, ¶ 42.

¶ 46       Prior to the decision in this case, the law was established that the phrase "catastrophic injury" in section 10(a) of the Benefits Act is synonymous with an injury resulting in the award of a line-of-duty disability pension under section 4-110 of the Pension Code (40 ILCS 5/4-110 (West 2008)). *Krohe v. City of Bloomington*, 204 Ill. 2d 392 (2003). The law was not established on the critical issue in this case, whether a "catastrophic injury" under section 10(a)

- 10 -

is also synonymous with the award of an occupational disease disability pension under section 4-110.1 of the Pension Code (40 ILCS 5/4-110.1 (West 2008)). Both the circuit court and the appellate court held that the "catastrophic injury" requirement was satisfied by the award of an occupational disease disability pension. This court has now clarified that an injured public safety employee cannot satisfy the "catastrophic injury" requirement based only on the award of an occupational disease disability pension.

¶ 47   This court's decision, however, does not necessarily preclude plaintiff from obtaining continuing health insurance benefits under the Benefits Act. While section 4-110, defining a line-of-duty disability pension, and section 4-110.1, defining an occupational disease disability pension, have different eligibility requirements, those provisions are not mutually exclusive. Plaintiff's receipt of an occupational disease disability pension does not preclude him from establishing that he also could have met the requirements for a line-of-duty disability pension for purposes of receiving section 10 benefits. Those provisions may overlap in some cases with an injured public safety employee being able to satisfy both of them. Indeed, the trial court recognized that plaintiff may have been able to establish the requirements for a line-of-duty disability pension as defined by section 4-110. The trial court observed that, over his 27-year career, plaintiff fought fires that exposed him to chemicals, toxins, and fumes, including carbon monoxide. He was required to go into fires, overhaul fire scenes, and move people, debris, and heavy equipment. In its written decision, the trial court asserted that "[u]nder the specific facts of the case, there is reason to believe that Mr. Bremer's disabling sickness would have qualified for a line of duty disability under Section 4-110 had that been requested at the administrative level."

¶ 48   There is nothing in the plain language of the Benefits Act stating that the trial court cannot make an independent determination on the "catastrophic injury" requirement in section 10(a) or that the only way to establish a catastrophic injury is through the Board's award of a line-of-duty disability pension. This court has established that a declaratory judgment action filed in the trial court is the appropriate way to seek benefits under section 10 of the Benefits Act. *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶¶ 46-47. The Benefits Act does not cross-reference the Pension Code. Accordingly, the trial court may make an independent determination on remand on whether plaintiff suffered a "catastrophic injury" under section 10(a).

¶ 49   Given the circumstances of this case, I believe the matter should be remanded to the trial court to give plaintiff an opportunity to meet the requirements of section 10(a), as clarified in this decision. While plaintiff cannot establish a catastrophic injury based only on his award of an occupational disease disability pension, he may be able to present additional evidence in this case to show an injury as defined by the line-of-duty disability provision in section 4-110 sufficient to qualify for section 10 benefits. I believe this case presents a disputed question of material fact on whether plaintiff can meet that standard. The city's right to judgment on plaintiff's claim for continuing health insurance benefits is not clear and free from doubt, and therefore, the drastic means of summary judgment is not appropriate for disposing of this litigation. *Seymour*, 2015 IL 118432, ¶ 42.

¶ 50   In my view, plaintiff should not be foreclosed from obtaining continuing health insurance benefits under section 10 based solely on his decision to seek an occupational disease disability pension rather than a line-of-duty disability pension. Continuing health insurance benefits

under section 10 provide a critical safety net for catastrophically injured public safety workers. This case should be remanded to the trial court for further proceedings on plaintiff's declaratory judgment action.

¶ 51    Finally, plaintiff's claim for attorney fees and costs under the Wage Actions Act (705 ILCS 225/0.01 *et seq.* (West 2008)) as alleged in count II and his claim for reimbursement of medical expenses as alleged in count III both depend upon his right to continuing health insurance benefits under section 10 of the Benefits Act. Those claims should be remanded to the circuit court for decision along with count I. Accordingly, I respectfully dissent from the majority's award of summary judgment to the city on counts I, II, and III of plaintiff's complaint.