(No. 24391.

THE CHICAGO TITLE AND TRUST COMPANY *vs.* THE CHIEF WASH COMPANY *et al.*—(THE FIRST NATIONAL BANK OF OTTAWA *et al.* Appellees, *vs.* THE CHICAGO TITLE AND TRUST COMPANY, Appellant.)

*Opinion filed February 16, 1938.*

Orr and Jones, JJ., dissenting.

Defrees, Buckingham, Jones & Hoffman, Castle, Williams & McCarthy, and Norbert B. Tyrrell, (Don Kenneth Jones, Vincent O'Brien, and John Merrill Baker, of counsel,) for appellant.

John A. Brown, (Maclay Hoyne, of counsel,) for appellees.

Mr. Justice Wilson delivered the opinion of the court:

The plaintiff, the Chicago Title and Trust Company, as successor trustee to the Cody Trust Company, filed a complaint in the superior court of Cook county against the Chief Wash Company (hereinafter designated defendant) and others, to foreclose a bond issue. Defendant answered and also filed a counter-claim seeking the removal of the successor trustee and damages against it on account of an alleged wrongful institution of the foreclosure suit. Subsequently, the First National Bank of Ottawa and others, (hereinafter referred to as intervening petitioners,) claiming to be the holders of all the unpaid bonds and coupons, conformably to leave granted, filed their joint petition by which they sought the removal of plaintiff as trustee, the appointment by the court of a successor, and an accounting. Plaintiff interposed answers to both the counter-claim of defendant and the intervening petition of the bondholders. The issues raised by the intervening petition and answer were tried before the chancellor who rendered a decree on June 5, 1936, removing plaintiff as trustee and appointing a successor to whom plaintiff was directed to account and to surrender the trust property. We note that the issues made by the complaint and the counter-claim and the answers thereto were not set for hearing and remain undecided. By a petition filed on June 26, 1936, plaintiff set forth the suggestion of the court that it might resign the trusteeship, expressed its willingness so to do and accordingly prayed that the decree of removal of June 5 be vacated and that it be permitted to resign as trustee. This petition was denied on July 8, and on July 15 plaintiff filed a second petition which again expressed its willingness to resign the trusteeship, renewed its request to resign and asked recon-

sideration of the order of July 8 and the vacation of the decree. The second petition was denied on July 17, 1936. Seeking a reversal of the order of July 17, and, also, of the decree of June 5, 1936, plaintiff prosecuted an appeal to the Appellate Court for the First District. The appeal resulted in an affirmance. (*Chicago Title and Trust Co.* v. *Chief Wash Co.* 291 Ill. App. 275.) Plaintiff's petition for leave to appeal to this court has been granted and the record is before us for further review.

The bond issue consisting of 150 bonds having an aggregate par value of $65,000, dated June 1, 1928, was secured by a trust deed in the nature of a mortgage upon a parcel of real estate improved by a building used solely by defendant in the operation of its laundry business. Rents, issues and profits were also pledged to secure the bonds and, in addition, for the benefit of persons making disbursements or incurring costs and expenses under the indenture. The valuable laundry equipment and machinery used in the conduct of defendant's business were not pledged to secure the payment of the bonds. In December, 1933, a receiver was appointed for the original trustee, the Cody Trust Company, and he, in due course, resigned the trusteeship under the trust deed. In February, 1934, defendant, upon a court order, obtained from the receiver of the trust company its list of bondholders, and on February 16, March 22, and April 7, 1934, communicated by letter with the bondholders in an attempt to persuade them to assent to an extension plan. Copies of the plan were enclosed with the letter of April 7. Plaintiff, nominated successor by the trust deed, accepted the trusteeship on or before June 14, 1934. Prior thereto it had been frequently advised of the negotiations in progress relative to the proposed extension. When plaintiff became trustee defaults existed in the payment of the principal maturities due June 1 and December 1, 1933, and June 1, 1934, and of interest installments on the dates specified. The payment of taxes was likewise in

arrears. By June 18, eighty per cent in amount of the outstanding bonds, namely, $45,000 out of $55,900, had been deposited pursuant to defendant's extension plan. On the day last named its attorneys wrote plaintiff formally advising it of the extension proposal, the appointment of The Trust Company of Chicago as depositary and of the consent by owners of eighty per cent of the bonds outstanding to the plan described in defendant's letter of April 7. Attention of the trustee was particularly directed to a provision of the trust deed to the effect that the trustee was not required to foreclose unless twenty-five per cent of the bondholders demanded such action. Defendant's letter continued: "It is obvious that no such demand can be made on you, and therefore any foreclosure would be brought on your own initiative, with the attendant risk."

Because of the defaults in payment of principal, interest and taxes, plaintiff elected, nevertheless, to declare the principal of all the outstanding bonds due, and, on July 7, without notice to defendant mortgagor or the bondholders, filed its complaint for foreclosure and the appointment of a receiver. The complaint charged that the trustee had rendered and was performing services for which it was entitled to reasonable fees, and that it had advanced moneys and incurred liabilities for costs, fees and expenses incident to suit, for which it was entitled to a prior lien under the terms of the trust deed. At no time prior to the filing of the bill to foreclose, so far as the record discloses, did any bondholder request or demand that plaintiff institute the litigation or, on the other hand, refrain from such action. One bondholder, at least, protested vigorously to plaintiff against its action shortly after the suit was filed.

Plaintiff moved for the appointment of a receiver on July 25, 1934. An order was entered continuing the motion to September 15, 1934, but directing defendant to pay to plaintiff, as trustee, $100 per month to be applied toward taxes pending disposition of the application for receiver.

Other than amending its complaint on August 3, 1934, by joining additional defendants, plaintiff did not further prosecute the foreclosure suit. Defendant's answer filed on August 27, 1934, averred that plaintiff had agreed not to foreclose without first advising it, the defendant. By September 15, 1934, defendant had succeeded in obtaining the deposit of all the bonds, with the exception of $800 in par value. The deposit of the bonds was accomplished, in part, by the purchase of certain bonds of defendant by its secretary and treasurer. The plaintiff's motion for a receiver was denied on September 19. Thereafter, upon defendant's motion, the chancellor ordered plaintiff, as trustee, to apply on taxes the two payments of $100 each, made by defendant to plaintiff prior to disposition of the motion for receiver.

Plaintiff refused to execute the extension agreement because defendant mortgagor declined to pay its bill representing fees and disbursements already incurred in connection with accepting the trust and in bringing the foreclosure suit. Its refusal to execute the extension agreement rendered it necessary for defendant to obtain from intervening petitioners authority for the depositary to cause endorsements to be made upon the bonds evidencing the extension of the time of their payment and to attach extension interest coupons. Thereafter, defendant executed a supplemental indenture as additional evidence of the extension in which the depositary joined. Plaintiff's letter to one of the attorneys for defendant, dated October 18, 1934, set forth costs, expenses and fees aggregating $1289.38 which defendant refused to pay. Of this amount $514.63 represented fees of the trustee which included moneys advanced for auditing the account of its predecessor, the Cody Trust Company, acceptance and insurance fees, and $300 for services purported to have been rendered in the foreclosure proceeding, including the execution of the proposed extension agreement and certification of the extended bonds. Additional items listed were $124.75, estimated by plaintiff's at-

torneys for court costs advanced and examinations of title, and $650 for attorneys' fees to the date of the letter. One of the defendant's attorneys, in a letter to plaintiff dated February 18, 1935, protested that the items were unreasonable and exorbitant, and asserted that since the completion of the extension the foreclosure suit had become one for fees. The suggestion was made that much time and considerable expense could be saved if the trustee resigned and dismissed the suit. No offer to dismiss defendant's counter-claim was made. Plaintiff replied three days later that its action in filing the complaint was in accordance with its duties as trustee, and expressed the opinion that the trial court should pass upon the matters raised by defendant's counter-claim.

On July 12, 1935, more than a year after the complaint was filed, defendant filed its amended and supplemental answer and counter-claim, narrating, in substance, the foregoing facts. The same day, intervening petitioners filed their petition setting forth the completion of the extension plan subsequent to the filing of the complaint and the conduct of the trustee recounted. Intervening petitioners charged that they had lost all confidence in the ability, impartiality and integrity of plaintiff, and prayed for its removal and the appointment of a successor. The resultant decree of removal contained, among others, these findings:

"15. That the filing of the complaint, the motion for the receiver and the refusal to execute an extension agreement were unnecessary and unwarranted and against the interests of the bondholders and the mortgagor, by reason of which the trustee has been guilty of officious conduct and breach of trust and ought to be removed.

"16. That the charges, fees and expenses demanded by the plaintiff as a condition precedent to executing said extension agreement and dismissing its said complaint for foreclosure are based upon its action in bringing and attempting to prosecute the foreclosure and because of its

said abuse of discretion and breach of trust should not be allowed."

Upon the hearing of the first motion to vacate the decree an attorney associated with one of the firms acting as counsel for plaintiff in this proceeding testified that he advised the filing of the complaint in order to sequester the rents, as the bond issue was badly in default, pointing out that, owing to principal, interest and tax delinquencies, plaintiff was running a very great risk if it did not at least bring suit and have the rents sequestered, and, further, that he informed plaintiff the bill could rest there, once the rents were being held, thereby allowing "these people" to take their time.

The controlling issue presented for decision is whether plaintiff's action in initiating the foreclosure proceeding warranted the findings quoted from the decree of June 5, 1936, and its removal as trustee. To determine this question a review of the pertinent provisions of the trust deed is essential since a trust itself constitutes the charter of the trustee's powers and duties. From it he derives the rule of his conduct, and it not only prescribes the extent and limit of his authority but also furnishes the measure of his obligations. (3 Pomeroy's Eq. Jur. (4th. ed.) sec. 1062.) Section 1 of article 6 authorizes the trustee to carry on the prosecution or defense of any suit affecting the security for the bonds, and to advance or expend the necessary money for such purpose including the payment of reasonable solicitors' fees, court costs, and any and all costs for the preparation of trial. By section 2 of article 6 the mortgagor covenanted to pay the trustee all moneys so advanced or expended, as well as reasonable compensation for its services. Such sums, the trust deed provides further, are to be deemed a first lien on the premises paramount to the bonds and to be so much additional indebtedness payable on demand. Section 3 of the same article declares that the provisions of the indenture shall not be construed as in any

sense obligatory, or as requiring any affirmative action by the trustee. The first section of article 7 contains both a permissive and a mandatory provision. In event of default in principal payments it is provided that the trustee may declare the principal of all the bonds to be due immediately. Upon the written request of the holders of twenty-five per cent in amount of the bonds outstanding, however, the trustee is commanded to accelerate the maturity of the entire issue. Section 1 of article 9 provides that in any case where the trustee enjoys the right to declare the principal of all the bonds immediately payable, it may, without any action on the part of any bondholder and without the necessity of the possession of any of the bonds and interest coupons (and upon the written request of the holder of not less than twenty-five per cent in amount of the outstanding bonds and being satisfactorily indemnified, shall) institute such actions in a court of competent jurisdiction to enforce and protect any rights of the trustee or of the bondholders as it may deem proper, and, especially, may commence proceedings to foreclose the trust deed. This section, in addition, provides that reasonable compensation for the services of the trustee together with all costs and reasonably necessary expenses, including all expenses of trial and appeal, and preparation for trial or appeal, and reasonable solicitors' fees incurred by the trustee, shall be so much additional indebtedness secured by the trust deed with a lien prior to that of the holders of bonds and interest coupons. Section 2 of article 9 authorizes the complainant to apply for the appointment of a receiver. Section 1 of article 11 provides that the trustee shall be under no obligation to exercise any power conferred by the trust deed or take any action under it unless (1) such exercise of power or action be, in its sole discretion, appropriate and in the best interests of all the outstanding bonds; (2) it shall have been thereunto requested by holders of not less than twenty-five per cent in amount of the outstanding bonds, and (3) indemnified to

its satisfaction against loss, damage, liability and expense, (including trustee's compensation and counsel fees,) reasonably to be anticipated. Section 2 of article 11 provides that the trustee shall not be answerable for any error of judgment or for any act done or step taken or omitted by it in good faith, nor for any mistake of fact or of law based on information or advice deemed authentic and correct.

A trustee under a trust deed is the representative of the mortgagor as well as of the mortgagee or bondholders, and he must act fairly and impartially toward both parties to the instrument and not exclusively in the interest of either. (*White* v. *Macqueen,* 360 Ill. 236; *Williamson* v. *Stone,* 128 id. 129; *Ventres* v. *Cobb,* 105 id. 33.) "Trustees are required to exercise the care and prudence which, ordinarily, men would exercise under like circumstances concerning their own affairs. If a trustee is vested with the power to exercise discretion, as in the present case, chancery will not interfere so long as he is acting *bona fide,* and not in an wholly unreasonable and arbitrary manner. (3 Bogert on Trusts and Trustees, sec. 560; 26 R. C. L., Trusts, sec. 234.) The inherent power of a court of equity over trustees includes the power, it is established, to remove a trustee, in a proper case, for a breach of trust, misconduct or disregard of his fiduciary duties. (3 Pomeroy's Eq. Jur. (4th ed.) sec. 1086; *White* v. *Macqueen, supra.*) The term "breach of trust" is sufficiently comprehensive to include every violation by a trustee of a duty which equity lays upon him, whether willful and fraudulent, or done through negligence, or arising through mere oversight or forgetfulness. Included is every omission or commission which violates in any manner the three major obligations of carrying out a trust according to its terms, of care and diligence in protecting and investing the trust property, and of using perfect good faith. (3 Pomeroy's Eq. Jur. (4th ed.) sec. 1079.) The remedy for a breach of trust or failure of a trustee to perform his duty is his removal

and the appointment of a successor. (*Martin* v. *McCune,* 318 Ill. 585; *Brower* v. *Callender,* 105 id. 88.) A prayer for the removal of a trustee is addressed to the sound judicial discretion of the chancellor, and although not controlled by positive rules, the discretion must not be abused. (3 Pomeroy's Eq. Jur. (4th ed.) sec. 1086.) Whether the relief should be granted must necessarily depend upon the circumstances of each particular case.

Plaintiff insists that the situation which obtained on the day it filed the foreclosure complaint justified its action in instituting the litigation. We approach the factual situation presented in the light of the familiar principles set forth. Nineteen days prior to filing the complaint plaintiff was notified by defendant that the owners of eighty per cent in amount of the bonds had assented to a plan extending the maturity of the loan and otherwise ameliorating defendant's obligations. Plaintiff was not the original trustee but was the successor designated in the indenture. During a period of four or five months prior to acceptance of the trust it was advised that negotiations for an extension were in progress between defendant and its creditors, the bondholders. It further appears that defendant had requested plaintiff not to foreclose. This situation existed when plaintiff entered upon its duties as trustee in June, 1934. Plaintiff obviously was not required to concern itself with the wisdom of the plan. Nor is the fairness of the proposal before us and we expressly decline to refer to its provisions. On the other hand, the record shows that payments of principal and interest had been in default since June 1, 1933, and taxes were badly in arrears. Furthermore, no rent or income from any source was forthcoming to reduce the defaults. The parties agree that not a single bondholder requested plaintiff to refrain from foreclosure. Likewise, as intervening petitioners point out, no bondholder requested it to foreclose. While eighty per cent of the outstanding bonds had been deposited in favor of defendant's extension

program plaintiff did not and could not know whether the plan would be consummated and it, therefore, owed a duty to the owners of the remaining twenty per cent of the bondholders as well as to the majority.

Intervening petitioners urge that plaintiff should have been content to look to those provisions of the trust deed relieving it of the responsibility of filing a bill to foreclose. Granting that plaintiff should not have evinced an eagerness to foreclose it could not, with impunity, ignore other provisions of the trust deed. The duty rested upon it of carefully considering and construing the whole instrument and its provisions together. Assents to the extension proposal did not necessarily amount to a direction to plaintiff to refrain from filing a foreclosure suit. Moreover, the bondholders—both the majority and the minority—had the right to assume the trustee would take appropriate action to protect their interests against the possibility of the failure of defendant's efforts to effect an extension of the maturity of the bonds. We cannot ignore the fact that there was an obligation to those bondholders who did not sign which had to be safeguarded. Failure to file a suit to foreclose might have resulted in damage to those who had not assented to the extension agreement. The trustee, we must reiterate, owed a duty to them as well as to the majority and if the extension plan had been unsuccessful might well have been answerable to them for evasion of its plain responsibility. It cannot be known whether defendant's officers would have purchased the bonds of those refusing to join in the extension if the foreclosure had not been started. The success of defendant's efforts in obtaining unanimous consent may therefore fairly be attributed, in part, to the impetus afforded by the foreclosure suit. True it is that the indenture did not render it mandatory for plaintiff to foreclose unless three concurrent conditions obtained: (1) In its discretion such action would be to

the interest of the holders of all the outstanding bonds; (2) unless the holders of twenty-five per cent of the bonds demanded such action, and (3) unless it should be indemnified to its satisfaction against loss, liability and expense. Even if these three conditions did not exist when the bill was filed, or within a reasonable period of time prior thereto, it was still necessary for plaintiff to exercise its discretion in conformity with the express provisions, among others, of the first section of articles 7 and 9 of the trust deed.

Before instituting the foreclosure suit plaintiff, as trustee, sought and followed competent legal advice. In determining whether a trustee has employed common prudence, caution and good faith in the exercise of a discretionary power, the fact that it resorted to such advice merits consideration. When all the facts and circumstances are reviewed we cannot say that the filing of the complaint and the motion for the receiver were either unnecessary or unwarranted, and, in consequence, against the interests of the bondholders and the mortgagor, amounting to officious conduct and breach of trust. In consonance with the familiar rule intervening petitioners must take the record as they found it in July, 1935, when they filed their petition. (*Groves* v. *Farmers State Bank of Woodlawn, ante,* p. 35.) Although now manifest, in the light of subsequent events, that it would have been better for plaintiff to have been less precipitate in filing the foreclosure suit and that the discordant relations which developed with defendant and intervening petitioners might have been thereby avoided, it does not follow that with the bond issue long in default, taxes heavily in arrears, plaintiff should have ignored the advice of counsel, and merely waited and hoped that success might attend defendant's efforts to effect an extension of the mortgage. Plaintiff made no inquiry of either assenting or non-depositing bondholders in reaching its decision to foreclose. While obvious, at this time, that such inquiry would have been wise, plaintiff was not obliged by the trust

deed to ascertain their wishes. Again, less drastic action than a foreclosure proceeding, with its attendant costs and expenses, might have been feasible if protection of plaintiff and the non-depositing bondholders required immediate action. Negotiations with defendant mortgagor might well have resulted in the payment of the same, or a larger, amount to the trustee as was obtained by resort to an application for the appointment of a receiver. A trustee should not so administer its trust as to subject itself to the accusation of having elected to rely on those provisions of an indenture relative to costs and fees to the virtual exclusion of exculpatory provisions relieving it of liability for not filing a foreclosure suit unless requested so to do by a specified percentage in amount of the bondholders. Its error in judgment, however, constitutes neither officious conduct nor brands it guilty of a breach of trust. The inescapable fact remains that the trustee's plain duty under the trust deed in the present case was to use its sound discretion. The parties, by their contract, agreed that the trustee should not be answerable for errors of judgment or for its acts done in good faith. Manifestly, the courts cannot make a new contract for the parties.

The judgment of the Appellate Court, and the order of the superior court of July 17, 1936, must each be reversed and the cause remanded to the latter court, with directions to vacate the decree of June 5, 1936, and to enter a new decree permitting plaintiff to resign the trusteeship, dismissing the foreclosure action, and allowing plaintiff its costs and reasonable remuneration in connection with the trusteeship and such solicitor's fees, if any, as the chancellor deems fair, considering, of course, the factual situation presented in this opinion.

*Reversed and remanded, with directions.*

ORR and JONES, JJ., dissenting.