**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190271-U

Order filed December 6, 2021

_____

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| MATTHEW R. SCHRECK, as the Father and Next Friend of L.S., a minor, and R.S., a minor | ) ) ) | Appeal from the Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois. |
| And | ) ) | |
| JAMIE L. ADCOCK SCHRECK, Co-Trustee of the E. James Adcock Descendants' Trust and Co-Trustee of Grace A. Adcock Descendants' Trust, | ) ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | Appeal No. 3-19-0271 Circuit No. 2015-CH-771 |
| v. | ) ) ) | |
| MARK ADCOCK, Trustee of the Trusts of L.S., a minor, and R.S., a minor, under the Will of James L. Adcock, and Co-Trustee of the E. James Adcock Descendants' Trust and Co-Trustee of the Grace A. Adcock Descendants' Trust | ) ) ) ) ) ) ) | The Honorable John C. Anderson, Judge, presiding. |
| Defendant-Appellee. | ) ) | |

_____

PRESIDING JUSTICE McDADE delivered the judgment of the court.
Justices HOLDRIDGE and O'BRIEN concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  (1) The trial court properly denied the motion for leave to file an amended complaint; (2) the court properly denied plaintiffs' motion to extend the time for discovery or to compel defendant's response to interrogatory request; (3) defendant did not abuse his discretion in refusing to provide trusts' assets for extra-curricular sporting activities; and (4) there are no genuine issues of material fact to be resolved on any of the issues raised by plaintiffs.

¶ 2     In this case, we are called upon to resolve a family dispute over control of the trust assets of two minor grandchildren of the decedent. The heirs' parents—the decedent's daughter and her husband—brought a cause of action for breach of fiduciary duty against the decedent's executor who is also the trustee of both trusts. This action began in March 2016 and was resolved by summary judgment in April 2019. Plaintiffs filed several motions and requests seeking removal of the trustee, accounting and distribution of the trusts' assets, and accounting of two unrelated trusts.

¶ 3     The parties filed cross-motions for summary judgment both of which focused on plaintiffs' claim of defendant's breach of fiduciary duty. The trial court granted summary judgment in favor of the defendant and denied plaintiffs' motion. The trial court also denied plaintiffs' various motions and requests regarding the administration of the trusts. Plaintiffs now appeal.

¶ 4                                                    BACKGROUND

¶ 5     On May 14, 2011, James L. Adcock (decedent) executed his Will. He made specific provisions for bequests from the residue of his estate to various members of his family. His daughter and only child, Jamie L. Schreck would receive 20 percent of the residual estate. Jamie is married to Matthew R. Schreck ("Plaintiffs"), and they are the parents of two minor children, L.S. and R.S. Both children were named beneficiaries in decedent's Will with each receiving 25 percent of the residual estate. The remaining 30 percent of the residual estate was granted evenly (10 percent each) to two nephews and a niece of decedent.

2

¶ 6     Concerning the minor beneficiaries, the Will stated:

"If any beneficiary to whom my executor is directed by this article to make any distribution is under the age of twenty-one years when the distribution is to be made, such distribution shall vest in interest to him or her indefeasibly, but the executor may, in its discretion, make such distribution to:

To a trustee selected by my executor (and such trustee may be my executor) to be held as a separate trust for such period of time as the trustee deems advisable but not after the time the beneficiary reaches twenty-one years of age at which time the trustee shall distribute said trust to the beneficiary. In the meantime, the trustee may use for his benefit so much of the income and principal as the trustee determines to be required for the beneficiary's support and education, adding any income not so paid to principal. The trustee may either pay such sums to the beneficiary or for his use to his parent or guardian or to any adult person with whom he is residing, without responsibility for their expenditure. No beneficiary's interest shall be transferable or assignable, or subject during his life to the claims of his creditors. Any trustee may designate an individual or corporation to become successor trustee in the event of the trustee's death, resignation, or inability to act. The Illinois Trusts and Trustees Act shall apply to any trusts so created."

¶ 7     The Will named defendant Mark Adcock as decedent's executor. Decedent died on May 30, 2011. The Will was admitted to probate on July 1, 2011. His daughter received approximately $167,000, and R.S. and L.S. each received approximately $208,750. Both R.S.

3

and L.S. were minors at the time of their grandfather's death. As authorized by the will, defendant determined the children's portions should be held in separate trusts and that he would appoint himself trustee of both trusts.

¶ 8 After informing plaintiffs of his decision, defendant met with them and their financial advisor Brian Soczka of Met Life. They raised no objection to defendant's designation of himself as trustee or the creation of separate trusts for the bequests. Plaintiffs requested that a specified amount of each minor's assets be invested in a Bright Directions college fund, and defendant acceded to their request.

¶ 9 In July 2014, Matthew left his job and lost his employer-funded insurance benefit and sought coverage through COBRA. On August 20, 2014, he provided defendant with a document showing that the COBRA insurance would be available to the minors until January 31, 2016. He requested that defendant provide funds from each minor's trust to pay for the COBRA policy until new insurance coverage for the children could be obtained. Based on misinformation provided by plaintiffs, defendant paid them $3,374.96 for two months of COBRA payments. Defendant later learned that plaintiffs had overstated the coverage obligation for the children by $2,203.24. Defendant made three requests for reimbursement of the children's money, but the trusts were never repaid. Instead, Jamie acknowledged that the overpayments from the children's trusts were used for her COBRA insurance coverage for August and September of 2014.

¶ 10 Defendant advised plaintiffs in writing on October 4, 2014, that he had decided to obtain private insurance for the minors and would pay for their current COBRA insurance until their new coverage began. Plaintiffs did not object. Defendant contacted an insurance agent who advised him to purchase "PPO Gold" policies. Defendant did not know the specifics of the minors' health conditions but believed that the new policies would be broad enough to cover a

4

wide network of providers and almost any medical situation. He purchased the new insurance policies on December 15, 2014, and forwarded the insurance cards along with other insurance documents to plaintiffs.

¶ 11       On March 24, 2015, plaintiffs filed their two-count complaint commencing this case. They raised two claims against defendant. First, they alleged that the trusts "have suffered financial damage" due in part to defendant acting "for the benefit of his own interest or the interests of others that are not the beneficiaries of the respective Trusts." Plaintiffs sought a court order requiring defendant to provide them with an accounting of "activities, assets and distributions of the Trusts."  In the second count, plaintiffs alleged that defendant had engaged in a series of "transactions, the nature and extent of which were, and still are, being kept secret from" them. They also alleged that defendant made "an undocumented loan to E. James Adcock, an alleged disabled person, from assets of the respective Trusts." Plaintiffs requested that defendant be removed as the trustee of the children's trusts and that plaintiff Matthew be named to replace him.

¶ 12       Plaintiffs twice amended their complaint before filing the operative third-amended complaint on March 7, 2016, in which they added, as a third count, a claim for a separate accounting of the trust assets held in two previously unmentioned trusts: the Grace A. Adcock Descendants' Trust and the E James Adcock Descendants' Trust. Defendant and Jamie are co-trustees of those trusts. With regard to the new claim, plaintiffs alleged that L.S. and R.S. are also beneficiaries of those trusts and are owed a fiduciary duty of maintaining financial records of the trusts' assets. They also alleged that the assets of these trusts include a limited liability company, Adcock Farms, LLC, of which defendant is a manager. They asserted that defendant or E. James Adcock had exerted exclusive control over the company to the exclusion of plaintiff

5

Jamie. Plaintiffs also requested that their attorney fees be paid from the principal of the minors' trusts and descendants' trusts and from Adcock Farms.

¶ 13        On June 23, 2016, defendant filed an answer to the third-amended complaint. He asserted, as an affirmative defense in response to Count 3, that plaintiffs are not named as beneficiaries in the two unrelated descendants' trusts and thus are not entitled to accountings for those trusts. He alleged that the sole asset of those trusts was a limited liability company and that plaintiffs had no right to any documents related to its management. Submitting and relying on the company's operating agreement, defendant contended that only members or duly authorized persons are entitled to an accounting of the company's managing documents and reports and then only if a formal request is made to the managers of the company. Defendant denied that any such request had ever been made.

¶ 14        In its final form, the third amended complaint raised the following claims specific to the minors' trusts. In the first count, plaintiffs argued that the accountings defendant provided for the minors' trusts are not detailed and fail to satisfy his duty to the minor beneficiaries. In the second count, plaintiffs claimed that, as a matter of law, defendant's authority as Trustee was limited to managing the funds in the trusts. They alleged that defendant's use of the minor's personal information to purchase private health insurance exceeded his authority and that he had breached his fiduciary duty by lending money from the minors' trusts to E. James Adcock[1], asserting that the $50,000 loan from each trust had been made without consulting plaintiffs as the beneficiaries' parents. Plaintiffs alleged that the loans were improper because they (1) did not include a payoff date or repayment schedule, (2) did not have adequate collateral, (3) were made

_____

[1] This E. James Adcock is defendant's father, but is not the eponymous E. James Adcock of the E. James Adcock Descendants' Trust.

6

without appraisal and (4) were outside the purpose of the trusts. Plaintiffs also raised 4 additional claims of breach of fiduciary duty: (a) refusing to return funds to the trusts, (b) refusing to support the children's education, (c) mismanaging trust funds, and (d) utilizing trust funds to play legal expenses.

¶ 15 On June 23, 2016, the trial court ordered the "parties to propound written discovery on or before" August 8, 2016. In disregard of the court's order, plaintiffs did not request any discovery of documents. Instead, they filed a motion to strike the affirmative defensive. On October 13, 2017, the trial court again ordered the parties to make all discovery requests by November 6, 2017, and to respond to all existing requests by December 4, 2017. Plaintiffs submitted interrogatories to defendant on December 11, 2017, to which defendant objected. Plaintiffs then filed two motions to compel defendant to answer those interrogatories, which the trial court denied.

¶ 16 Plaintiffs filed a motion in January 2018 seeking to compel defendant to use assets from the children's trusts to pay for school computers for L.S. and R.S. They also requested that the court compel defendant to use funds from L.S.'s trust to re-enroll him in hockey and to pay for equipment. Plaintiffs argued that defendant had no basis to refuse trust assets for educational or academic services. The court also denied this motion.

¶ 17 On May 11, 2018, the trial court issued a new order directing the parties to complete all discovery by August 13, 2018. Ten days before this deadline, plaintiffs filed a motion for an extension of time to complete discovery, asserting that the extension was necessary to depose E. James Adcock, who was a defendant in a separate claim. The parties later agreed to voluntarily dismiss the claim against E. James Adcock and he was removed as a defendant. On August 8, 2018, plaintiffs completed the deposition of defendant. On August 28, two weeks past the close

7

of the discovery, they moved for leave to file a fourth amended complaint, arguing that new information supporting the removal of defendant as trustee required amending the complaint. The trial court denied both motions, stating: "I think this case has been – has been marked by delays, by disregard of court orders and by gamesmanship." Plaintiffs subsequently filed a motion for summary judgment.

¶ 18        While that motion was pending, defendant filed a cross-motion for summary judgment. Concerning the plaintiffs' first count, defendant argued that all accountings had been provided to plaintiffs without objection from them. On the second count, defendant argued that no secret transactions had been made on the children's trusts, reiterating that all documents had been submitted to plaintiffs. On the third count, defendant argued that the affirmative defenses established plaintiffs had no right of accounting for the two unrelated trusts. After filing his motion, defendant sent plaintiffs additional accounting documents for the minors' trusts.

¶ 19        Defendant also responded to plaintiffs' motion for summary judgment, stating, *inter alia*, that the loans to E. James Adcock were properly documented with a promissory note, collateral assignment of beneficial interest, and a recorded mortgage. Defendant explained that, although he had approached E. James Adcock to make the loan because the stock market had become less reliable and he "thought it would be a good place to diversify some of the money," he had not been personally involved in making the loan. The mortgage was obtained and reassigned by the State Bank of Countryside to the two trusts. An independent attorney, Charles Corrigan, represented the trusts and during the lending process stated his belief that the borrower "was financially able to repay [the loans]." Corrigan charged a total $630 for his services. Defendant sent the borrower quarterly invoices, the borrower made regular payments and defendant deposited all payments in the accounts of each of the trusts.

¶ 20 The trial court denied plaintiffs' motion for summary judgment and granted defendant's cross-motion for summary judgment following an evidentiary hearing.

¶ 21 ANALYSIS

¶ 22 On appeal, plaintiffs raise five broad claims of error by the trial court: (1) denying plaintiffs leave to file a fourth amended complaint; (2) denying plaintiffs' motion to extend the time for discovery; (3) denying plaintiffs' motion to compel defendant to answer interrogatories and produce documents; (4) denying plaintiffs' motion to strike defendant's affirmative defenses in relation to plaintiffs' alleged rights of accounting on the two unrelated trusts; and (5) granting defendant's motion for summary judgment over plaintiffs' motion. We affirm the trial court's decision.

¶ 23 A. Leave to File a Fourth Amended Complaint

¶ 24 Trial courts are encouraged to freely and liberally allow a party to amend the pleadings. *Kolacki v. Verink*, 384 Ill. App. 3d 674, 680 (2008). A party's right to amend, however, is not absolute or unlimited. *Id.* The test is whether allowing the amendment would further the ends of justice. *Id.* In determining whether to allow a party to amend a pleading, a trial court should consider the following factors: whether the amendment would cure a defect in the pleadings; whether the other party would be prejudiced or surprised by the proposed amendment; whether the proposed amendment is timely; and whether there were previous opportunities to amend the pleadings. *Id.* at 681. A trial court has broad discretion in ruling upon a motion for leave to amend the pleadings and its decision in that regard will not be reversed on appeal absent an abuse of discretion. *Id.* An abuse of discretion occurs when "the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *In re Marriage of Heroy,* 2017 IL 120205, ¶ 24 (Internal quotation marks omitted).

9

¶ 25 Applying the above legal principles to the facts of the present case, we find that denial of the motion for leave to file a fourth amended complaint was not an abuse of discretion. First, the trial court found that the motion was not timely. The court noted that the case had "been marked by delays, by disregard of court orders and by gamesmanship." Thus, the court concluded that the timing of the motion was a further attempt by plaintiffs at prolonging the case. We find nothing in the record that undermines this conclusion. And second, the proposed fourth-amended complaint would not cure a defect in the third-amended complaint. Although plaintiffs claimed to have discovered pertinent facts during the depositions, they do not explain how those facts would strengthen their claims or weaken defendant's defense or why they would require a new pleading. The trial court did not abuse its discretion by denying plaintiff's request for leave to file a fourth-amended complaint.

¶ 26                          B.  Motions for Extension of Discovery

¶ 27 Whether to allow an extension of time for discovery lies within the trial court's discretion and will not be reversed absent an abuse of discretion. *Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 22. The "Illinois Supreme Court Rules allow the trial court to extend the time to file any pleading either before or after the expiration of the deadline when good cause is shown." *Id.* (citing Ill. S. Ct. R. 183). Whether "good cause" has been shown "is a fact-dependent issue and [also] falls within the discretion of the court." *Id.* (citing *Vision Point of Sale, Inc. v. Hass*, 226 Ill. 2d 334, 353 (2007)).

¶ 28 As with the motion for leave to amend, the trial court also denied the motion for extension of the discovery period because it found that the case had "been marked by delays, by disregard of court orders and by gamesmanship." We find no evidence in the record to conclude that the trial court abused its discretion in so doing. The court twice issued orders advising the

10

parties to complete all discovery matters by a stated date. Relevant to this motion, the court had issued its order on May 11, 2018, directing the parties to complete all discovery by August 13, 2018. Plaintiffs waited until August 3, 2018, to file the motion. This last-minute filing is evidence of the "delays," "disregard" and "gamesmanship" the court found to have been problematic.

¶ 29                          C.  Motions to Compel Discovery Response

¶ 30          Plaintiffs next challenge the trial court's decision to reject as untimely their earlier motion to compel defendant to respond to their interrogatory requests. "A trial court's ruling on a motion to compel discovery will stand absent a manifest abuse of discretion affirmatively and clearly shown by the appellant." *Dufour v. Mobile Oil Corp.*, 301 Ill. App. 3d 156, 160 (1st Dist. 1998). Plaintiffs have failed to show that the court abused its discretion.

¶ 31          On June 23, 2016, the court issued its first order directing the parties to make their discovery requests. Although it gave the parties until August 8, 2016, to do so, plaintiffs made no timely discovery request. On October 13, 2017, the court again ordered the parties to make all discovery requests by November 6, 2017, and to respond to all existing requests by December 4, 2017. Plaintiffs did not even submit their requests until December 11, 2017, more than a a month after the deadline for requesting discovery had passed.

¶ 32                          D.  Motion to Compel Defendant to Use Trusts' Assets

¶ 33          Plaintiffs contend that decedent's Will and the trust language require the trustee to use the assets for the educational benefit of the minors. They contend that the use of trust assets for extra-curricular sport activities falls under this category of benefit and argue that the court erred in denying their motion to compel defendant to use assets from L.S.'s trust to re-enroll him in hockey and to pay for equipment.

¶ 34    We interpret trusts using the same principles applicable to the construction of wills and contracts. *Mucci v. Stobbs*, 281 Ill. App. 3d 22, 29 (5th Dist. 1996). Our primary goal is to ascertain the intent of the grantor. The grantor's intent can be determined by reading the document creating the trust in its entirety. *Harris Trust & Savings Bank v. Donovan*, 145 Ill.2d 166, 172 (1991). In construing the language of the trust, we must give the words used their plain and ordinary meaning. *Id.* We must also consider the trust document as a whole and construe its provisions so they do not conflict with each other if possible. *Mucci*, 281 Ill.App.3d at 29.

¶ 35    In this case it was the Will that established the executor's options for disposition of the minors' inheritance and described the testator's intent in the event his executor chose to create trusts for the children. The plain and ordinary language of the Will shows that decedent trusted his executor (the defendant) to decide whether it was in the children's best interest to give them their money outright or to hold it in trust until they reached the age of twenty-one. In the event he chose to place the funds in trust with himself as trustee, he could use as much of the principal and income as "[he] determines to be *required* for the beneficiary's support and education, adding any income not so paid to principal." (Emphasis added) The Will also clarified that it would be solely the trustee's decision whether to provide the needed items of support and education himself or, if not, to whom interim distributions would be made for the purpose of securing them.

¶ 36    "Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion." *Laubner v. JP Morgan Chase Bank, N.A.*, 386 Ill.App.3d 457, 464 (4th Dist. 2008). Moreover, "[a]bsent actions by the trustee that are outside the bounds of reasonable judgment a

12

court cannot substitute its judgment for the trustee's judgment." *Carter v. Carter*, 2012 IL App (1st) 110855, ¶19 (internal quotation marks omitted).

¶ 37    Given plaintiffs' history of concealing relevant information from defendant and doing so to the detriment of the minors' trusts, skepticism about their demands would be prudent. We conclude defendant exercised reasonable judgment and find no abuse of discretion. Defendant has consistently provided fund assets for the support and benefits of both minors. Immediately after the trusts were funded, defendant coordinated with plaintiffs in consulting with plaintiffs' financial advisor, Brian Soczka of Met Life. At plaintiffs' request, and with Soczka's advice, defendant opened a college fund account for each minor. Defendant also provided plaintiffs $3,374.96 for two months of COBRA health insurance coverage for the minors. Defendant later learned that he overpaid plaintiffs by $2,203.24 because plaintiffs concealed the fact that part of the payment was, contrary to the testator's intent, used for plaintiff Jamie's coverage. Although defendant repeatedly asked plaintiffs to reimburse the trusts, they have never done so. We also note that plaintiffs' prayer that their attorney fees be paid from the principal of the minors' trusts does not reflect a commitment to preserving and growing those assets as the decedent had intended. We see no evidence that removing defendant and substituting either or both plaintiffs as trustee is consistent with the testator's intent or in the minor beneficiaries' best interest.

¶ 38    E.  Defendant's Motion for Summary Judgment

¶ 39    Plaintiffs argue that the trial court erred not only in denying their motion for summary judgment but also in granting defendant's motion for summary judgment. They contend that (1) defendant violated the beneficiaries' right to an accounting of their individual trusts, (2) they are entitled to an accounting of the two unrelated trusts for which defendant and Jamie L. Schreck

13

were co-trustees, and (3) defendant breached his fiduciary duties in his dealing with the trusts' assets. We will address each contention separately.

¶ 40 "We review summary judgment rulings de novo." *Bremer v. City of Rockford*, 2016 IL 119889, ¶ 20. Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Internal quotation marks omitted.) *Id.* When, as here, the parties file cross-motions for summary judgment, they agree that only questions of law are involved and invite the court to decide the issues based on the record. *Id.* "However, the mere filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate a court to render summary judgment." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28.

¶ 41                      1. Whether Defendant Violated the Minors' Accounting Rights

¶ 42 Plaintiffs argue that defendant failed to provide the minor beneficiaries proper accounting of their trusts. Defendant provided accountings for both trusts in 2015, 2016, and 2017. Although they acknowledged receipt of these accounting reports and made no contemporaneous objection, plaintiffs now contend that the reportings were inaccurate. Plaintiffs, however, do not offer any evidence to support a finding of inaccuracy. Moreover, they have offered no standard or correction by which we are to assess or determine whether the accounting reports were inaccurate.

¶ 43 Under the Trust Act in effect at the time, a trust beneficiary is entitled to "a current account showing the receipts, disbursements and inventory of the trust estate." 760 ILCS 5/11(a) (West 2019). The accounting for the calendar year 2015 contained a chart for each child as to all investments, checking accounts and the loan to E. James Adcock with the beginning and ending

14

amounts and the annual rate of return for each, and attached was a detailed chart of all monies in and out of each checking account. The parents were advised as to the loan repayment, that money had been deposited into the checking accounts and that the trustee proposed to transfer $50,000 for each child to their Bright Directions account. We conclude that the 2015 accounting showed the receipts, disbursements, and inventory of the trust estate as required by the statute. The 2016 accounting report also showed the receipts, disbursements, and inventory of the trust estate, and again, as required by the statute. Moreover, the 2017 accounting was similar but contained cumulative data for 2015, 2016 and 2017 for a year-by-year comparison. It also included attached copies of the corresponding statements, checkbook registers and the tax information for J.P. Morgan and Bright Directions accounts for each trust. We find no deviation from the statutory requirements.

¶ 44        2. Whether Plaintiffs are Entitled to Accounting on the Unrelated Trusts

¶ 45        Plaintiffs next argue that defendant failed to provide them with an accounting of the income for the two unrelated trusts. They contend that they are entitled to an accounting for each of these trusts because plaintiff Jamie L. Schreck is co-trustee—with defendant—of said trust. Plaintiffs are incorrect. "A trustee must report to all beneficiaries who are entitled to receive or are receiving income." *Sanders v. Stasi*, 2011 IL App (4th) 100750, ¶ 19. However, if no beneficiaries are entitled to receive or are receiving income, a trustee must report to any beneficiaries who are "eligible to have the benefit of the income from the trust estate." *Id.* Plaintiffs make no argument that either Jamie L. Schreck or the minor beneficiaries are eligible to receive income from the two unrelated trusts. Nor did plaintiffs offer any evidence—beyond the mere allegation that Jamie L. Schreck is a co-trustee—to establish that plaintiffs are beneficiaries of said trusts.

15

¶ 46                    3. Whether Defendant Breached his Fiduciary Duties

¶ 47         "To establish a claim for breach of fiduciary duties, a plaintiff must prove: (1) the existence of a fiduciary duty on the part of the defendant; (2) a breach of that duty; (3) damages; and (4) a proximate cause between the breach and the damages." *Carter v. Carter*, 2012 IL App (1st) 110855, ¶ 25. "It is well settled that a fiduciary relationship exists between trustee and beneficiary as a matter of law." *Janowiak v. Tiesi*, 402 Ill. App. 3d 997, 1006 (2010). "The trustee must keep in mind the beneficiary's interest and the trustee cannot do any act inconsistent with [that] interest irrespective of the trustee's good or bad faith." *Rennacker v. Rennacker*, 156 Ill. App. 3d 712, 715 (1987). Thus, we start by properly construing defendant's authority under the trusts to determine if he breached his fiduciary duties.

¶ 48         "A trust may be created by a will, but in such case it is an express trust, and must meet the requirements of such." *Wagner v. Clauso*n, 399 Ill. 403, 411 (1948). The will must establish with clarity: (1) the subject matter of the trust; (2) "the beneficiaries or person on whose behalf the trust is created;" (3) "the nature and quantity of the interests which they are to have;" and (4) "the manner in which the trust is to be performed." *Id.* at 411-12. All of these elements must be described with certainty for the trust to be created. *Id.* at 412. In this case, the trust was not directly created by the Will but the Will specifically authorized its creation, identified the trust *res*, the beneficiaries, the purpose, and tied performance to statute.

¶ 49         "The cardinal rule for the construction of a will is to ascertain the intention of the testator, but that intention must be ascertained from the words of the will." *Id.* In the will, decedent bequeathed 25 percent of his residual estate to R.S. and another 25 percent to L.S. The Will specified that if either R.S. or L.S. is under the age of 21 when they are to receive their distribution, the executor can make the distribution to a trustee to be held in trust. The trustee

16

will have the discretion to hold the distribution until "the trustee deems advisable but not after the time the beneficiary reaches twenty-one years of age ***." Looking at each of the *Wagner* factors, we find that the Will (1) established the distribution of property as each trust's subject matter; (2) defined any named beneficiary in the Will under the age of 21 as a beneficiary of each trust; and (3) stated the distribution as the nature and quantity of each beneficiary's interest.

¶ 50    The Will also established a standard by which "the trustee may use for his benefit so much of the income and principal as the trustee determines to be required for the beneficiary's support and education, adding any income not so paid to the principal." In *Stein v. Scott*, the settlor stated that "the trustee may in [his] discretion" make use of the trust property. *Stein v. Scott*, 252 Ill. App. 3d 611, 615 (1993). The court concluded that this language created unfettered discretion subject to the express condition that the use be made "for the benefit of" the beneficiary. *Id.*

¶ 51    Here, although the language used does not include the word "discretion," its effect is the same as the language in *Stein*. The decedent used the permissive verb "may" to convey a discretionary power of usage to his trustee. The decedent also vested the trustee with the ability to "determine" when the usage is "required." Although the term "required" placed a limitation on the trustee's discretion, the decedent reinforced the trustee's discretion by granting him the ability to "determine" when the conditions for usage are met.

¶ 52    Plaintiffs have raised four claims of breach of fiduciary duties for which they request that the court remove defendant as the trustee of each of minor's trusts: (a) refusing to support the minor's education, (b) refusing to return funds to the trusts, (c) mismanaging trust funds by making an inappropriate loan, and (d) utilizing trust funds to play legal expenses. A court should not interfere with a trustee's exercise of discretion given to him or her by the trust instrument so

17

long as the trustee does not act in a wholly unreasonable and arbitrary manner. *Laubner*, 386 Ill. App. 3d at 464 (citing *Chicago Title & Trust Co. v. Chief Wash Co.*, 368 Ill. 146, 155, 13 N.E.2d 153, 157 (1938)). Likewise, "[w]here discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion." *Id.* (citing Restatement (Second) of Trusts § 187, at 402 (1959) (current through 2008)).

¶ 53    Since the Will gives the trustee significant discretion, we address each claim for removal independently. A court of equity has inherent powers to remove a trustee for breach of trust, misconduct, or disregard of his fiduciary duties. *Laubner*, 386 Ill. App. 3d at 467 (citing *Chicago Title*, 368 Ill. at 155). However, removal of a trustee is an extreme remedy, and neither the court nor any party should lightly disregard the testator's choice of trustee. *Id.* (citing *Wylie v. Bushnell*, 277 Ill. 484, 505, 115 N.E. 618 (1917)). We would extend, in this case, that protection to the testator's choice of person to designate the trustee. Not every instance of mistake or neglect on the trustee's part, if any occur, requires the removal of the trustee. *Id.* The court should remove a trustee only if the trustee endangers the trust fund and removal is clearly necessary to save the trust. *Id.*

¶ 54                    a. The refusal to support the minors' education.

¶ 55    Plaintiffs contend that defendant breached his duty by not providing funds for a computer, to re-enroll one of the children in an ice hockey program, and for new hockey requirement. Plaintiffs noted that the program would benefit the minor's education and college prospects. Plaintiffs asked the court to compel defendant to distribute the funds necessary for the re-enrollment. Plaintiffs argue that the trial court erred in granting summary judgment and refusing to remove the trustee.

18

¶ 56        The terms "support" and "education" are not defined in the Will. However, reviewing the terms of the Will, we find that its central purpose was to maintain and grow the trust property during the minority of each child and until its ultimate distribution. To ensure fulfillment of that purpose, the Will specifically limited the existence of each trust to "such period of time as the trustee deems advisable but not after the time the beneficiary reaches twenty-one years of age at which time the trustee shall distribute said trust to the beneficiary." It was the decedent who chose not to distribute the funds to the parents directly. Instead, he instructed that the distribution could, at the discretion of his named executor, be made in separate trusts for any minor heirs named in his Will. Then, presumably knowing that only the grandchildren would meet this requirement, he did not name their parents as trustees. Moreover, he also did not grant the parents the power to name the trustee, instead giving that power to the executor with the express authorization to name himself.

¶ 57        In concluding that the central purpose of the trust the maintenance and growth of each minor's bequeathment, the provision for making distributions to the minor for his "support and education" is secondary to that purpose. Defendant may exercise his discretion to determine whether distribution of trust assets "is *required* for the beneficiary's support and education" the trust's secondary purpose. "Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion." *Laubner*, 386 Ill. App. 3d at 464 (citing Restatement (Second) of Trusts § 187, at 402 (1959) (current through 2008)). We conclude that defendant's election not to distribute assets to enroll the minors in extracurricular activities or for other specific requests from their parents (plaintiffs) falls within his discretion and is not an abuse of his discretion or

19

grounds for removal. Therefore, the trial court did not err in granting defendant summary judgment on this issue.

¶ 58                              b. The refusal to return trust assets.

¶ 59       Plaintiffs argue that defendant exceeded his authority under the Will by using the children's health information and paying for their health insurance. Plaintiffs contend that defendant's discretion is limited to making distributions to the parents or guardians. We find no such limitation in the language of the Will, and thus, we reject plaintiffs' argument.

¶ 60       The Will grants the trustee two discretionary operative powers. First, the trustee "may use" the trusts' "income and principal for the beneficiary's support and education." And second, the "trustee *may* either pay such sums to the beneficiary or for his use to his parent or guardian or to any adult person with whom he is residing." (Emphasis added) Plaintiffs equate the verb "may" with "shall." However, in this context, "may" is best read as "can but need not." Thus, the trustee *can, but need not*, make distribution directly "to the beneficiary or for his use to his parent or guardian or to any adult person with whom he is residing."

¶ 61       In this case, defendant—acting as Trustee—acted reasonably in obtaining and directly paying for the minors' health insurance. Defendant had previously provided plaintiffs $3,374.96 for two months of COBRA health insurance coverage for the minors. Defendant later learned that he overpaid plaintiffs by $2,203.24 because plaintiffs concealed from him that part of the disbursement had been used improperly to pay for plaintiff Jamie's coverage. Although defendant asked plaintiffs multiple times to reimburse the trusts, they never returned the money. He therefore had reason to doubt that plaintiffs would limit expenditures of the trust money solely for the benefit of the minors. The trial court also did not err in granting defendant summary judgment on this issue.

20

¶ 62                                c. The Loan to E. James Adcock

¶ 63          Plaintiffs next argue that defendant breached his fiduciary duties by making two loans of

$50,000 to E. James Adcock, whom plaintiffs identified as defendant's father. In his motion,

defendant acknowledges the loans to E. James Adcock, a family member. The loan was made for

$100,000 with half coming from the separate trust of each minor. A trustee's fiduciary duties

include "the duty to serve the interest of beneficiaries with total loyalty, excluding all self-

interest, and [he] is prohibited from dealing with the trust's property for [his] individual benefit."

*In re Estate of Muppavarapu*, 359 Ill. App. 3d 925, 929, (2005) (quoting *Giagnorio v. Emmett C.*

*Torkelson Trust*, 292 Ill.App.3d 318, 325 (1997)). Any "transaction involving the investment or

management of trust property is presumed to be affected by a conflict between personal and

fiduciary interests if it is entered into by the trustee with *** the trustee's descendants, siblings,

parents or their spouses." 760 ILCS 3/802(b)(2) (2019). This presumption, however, is not

irrebuttable and may be overcome with evidence. *In re Estate of Muppavarapu*, 359 Ill. App. 3d

at 930. "The presence of good faith and common prudence necessarily dictates the absence of a

breach of fiduciary duty." *NC Illinois Tr. Co. v. First Illini Bancorp, Inc.*, 323 Ill. App. 3d 254,

263 (2001).

¶ 64          Taking all well-pleaded facts in favor of plaintiffs, we find defendant exercised sufficient

"reasonable care, skill, and caution" akin to a prudent investor to overcome any presumption of

conflict between his duties as Trustee and his relationship to E. James Adcock." *See e.g.,*

*Giagnorio v. Emmett C. Torkelson Tr.*, 292 Ill. App. 3d 318, 328 (1997) (quoting 760 ILCS

5/5(a)(1), (a)(2) (West 1994)). Defendant explained that, although he had approached E. James

Adcock to make the loans, he had not been personally involved in making them. The loans were

properly documented with a promissory note, collateral assignment of beneficial interest, and a

21

recorded mortgage which was obtained and reassigned by the State Bank of Countryside. Attorney Charles Corrigan represented the trusts during the lending process and believed that E. James Adcock "was financially able to repay [the loans]." Corrigan charged the trusts $630 for his services. Moreover, defendant sent regular invoices from the trust to the borrower and placed the payments of those invoices into the trust accounts.

¶ 65                                  d. Payment of Legal Expenses

¶ 66        Finally, plaintiffs argue that defendant breached his fiduciary duties by paying certain legal expenses with assets from the children's trusts. The legal expenses at issue were a charge of $630 from Attorney Charles Corrigan who allegedly represented the trusts during the processing of the loans to E. James Adcock. "'Expenses incident to preservation of a trust or for the benefit thereof are properly chargeable against and reimbursable from the trust estate.'" *David v. Russo*, 119 Ill. App. 3d 290, 297 (1983) (quoting *Brown v. Commercial National Bank of Peoria*, 94 Ill.App.2d 273, 280 (1968)). Because defendant paid the expenses in his exercise of reasonable care, we conclude that there remains no genuine issue of fact on whether the expenses were incurred for the benefit or preservation of the trusts.

¶ 67                                          CONCLUSION

¶ 68        The judgment of the circuit court of Will County is affirmed.

¶ 69        Affirmed.

22